IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ACTIVECARE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11659 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 8** |

**SUPPLEMENT TO MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV) MODIFYING THE AUTOMATIC STAY, (V) SETTING A FINAL HEARING, AND (VI) GRANTING RELATED RELIEF**

ActiveCare, Inc. ("**ActiveCare**") and 4G Biometrics, LLC ("**4G Biometrics**"), as debtors and debtors in possession in the above-captioned chapter 11 cases (the "**Debtors**"), respectfully submit this supplement (the "**DIP Supplement**") to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Secured Postpetition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Adequate Protection, (IV) Modifying the Automatic Stay, (V) Setting a Final Hearing, and (VI) Granting Related Relief* [Docket No. 8] (the "**DIP Motion**").[2] In further support of the DIP Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

---

[1] Pursuant to 11 U.S.C. § 342(c)(1), the Debtors in these cases, along with the last four digits of each Debtor's federal tax-identification number, are: ActiveCare, Inc. (8125); and 4G Biometrics, LLC (5678). The location of the Debtors' corporate headquarters and their address for notice purposes is 1365 West Business Park Drive, Suite 100, Orem, UT 84058.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Motion.

64681261.3

**BACKGROUND**

A. **General Background**

1. On the July 15, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").

2. Also on the Petition Date, Debtors filed the DIP Motion seeking entry of the Interim Order (i) authorizing the Debtors to obtain secured postpetition financing; (ii) authorizing the use of Cash Collateral; (iii) granting adequate protection; (iv) modifying the automatic stay; (v) setting a final hearing; and (vi) granting related relief.

3. On July 19, 2018, the Court entered the Interim Order and set a hearing on the DIP Motion to consider entry of the Final DIP Order for August 6, 2018.

4. In considering Debtors' DIP Motion, the Court raised the issue of whether alleged factor Complete Business Solutions Group, Inc. ("**CBSG**") had an interest in cash collateral entitled to adequate protection. This DIP Supplement provides background information on all of the Factors (defined below) and an analysis of each Factors' purported security interest and interest in Debtors' Cash Collateral. As discussed more fully below, none of the Factors has a perfected security interest or interest in Debtors' Cash Collateral. Accordingly, none of the Factors has an interest entitled to adequate protection under the Final DIP Order.

B. **The Factor Agreements of ActiveCare[3]**

5. Prior to the Petition Date, ActiveCare had previously entered into factoring arrangements in the ordinary course of business. A chart summarizing the Factors, the Factor Agreements (as defined below), and any purported security interests of the Factors is attached

---

[3] The terms contained within this DIP Supplement are qualified in their entirety by the documents referenced. To the extent anything in this DIP Supplement is inconsistent with such documents, the terms of the applicable documents shall control.

hereto as <u>Exhibit 1</u>. A summary of the UCC-1 filings with ActiveCare as debtor is attached hereto as <u>Exhibit 2</u>.

**CBSG**

6. On February 19, 2016, the Pre-Petition Lender, ActiveCare, and CBSG entered into that certain Subordination Agreement, whereby CBSG subordinated (a) all of ActiveCare's indebtedness and obligations to CBSG, whether presently existing or arising in the future, to all of ActiveCare's indebtedness and obligations to the Pre-Petition Lender, whether presently existing or arising in the future, and (b) CBSG's security interest in ActiveCare's property to the Pre-Petition Lender's security interest in such property (the "**CBSG Subordination Agreement**").

7. On April 17, 2017, ActiveCare entered into that certain Factoring Agreement with CBSG (the "**CBSG Factoring Agreement**"). ActiveCare had previously entered into factoring arrangements with CBSG in the ordinary course of business and in amounts received that were less than $400,000. The CBSG Factoring Agreement provided for an advance of $1,794,000 that comprised $1,000,000 in cash and the consolidation of $794,000 from four prior transactions into the amounts owed under the CBSG Factoring Agreement. Pursuant to the CBSG Factoring Agreement, ActiveCare purported to assign to CBSG its "future accounts, contract rights, and other obligations arising from or relating to the payment of monies" from ActiveCare's customers and other third party payors. The CBSG Factoring Agreement required payment of the minimum daily amount of $12,999.99 until a specified amount was paid.

8. In conjunction with entering into the CBSG Factoring Agreement, ActiveCare and CBSG entered into that certain Security Agreement (the "**CBSG Security Agreement**"), whereby ActiveCare purported to grant CBSG a security interest in certain of ActiveCare's

collateral identified as then owned or thereafter acquired (a) accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory; and (b) all proceeds thereof, to secure ActiveCare's performance of obligations under the CBSG Factoring Agreement.

9. CBSG did not file a UCC-1 financing statement against ActiveCare with the Delaware Secretary of State in connection with the CBSG Security Agreement. [*See* Exhibit 2, Summary of UCC-1 Filings of ActiveCare].

10. On April 16, 2018, CBSG filed a complaint against ActiveCare in the Philadelphia County Court of Common Pleas titled *Complete Business Solutions Group, Inc. v. Activecare, Inc., et al.*, Case No. 180403552, alleging ActiveCare's default under the CBSG Factoring Agreement and seeking a total of $1,772,095.63 in amounts outstanding under the CBSG Factoring Agreement.

**EBF Partners, LLC**

11. On August 14, 2017, ActiveCare entered into that certain Merchant Agreement with EBF Partners, LLC ("**EBF**"), whereby ActiveCare purported to assign to EBF certain future accounts receivable (the "**EBF Merchant Agreement**"). Pursuant to the EBF Merchant Agreement, EBF advanced to ActiveCare $175,000.00 in exchange for $248,500.00 of ActiveCare's future accounts receivable.

12. In conjunction with entering into the EBF Merchant Agreement, ActiveCare and EBF entered into that certain Security Agreement (the "**EBF Security Agreement**"), whereby ActiveCare purported to grant EBF a security interest in certain of ActiveCare's collateral to secure ActiveCare's performance of obligations under the EBF Merchant Agreement.

13. EBF did not file a UCC-1 financing statement against ActiveCare with the Delaware Secretary of State in connection with the EBF Security Agreement. [*See* Exhibit 2, Summary of UCC-1 Filings of ActiveCare].

14. Prior to the Petition Date, EBF commenced an action in the Supreme Court of the State of New York titled *EBF Partners, LLC v. Activecare, Inc. d/b/a Activecare, Inc.*, wherein EBF entered judgment against ActiveCare in the amount of $135,168.67 for amounts owed EBF under the EBF Merchant Agreement on March 28, 2018 (the "**EBF Judgment**").

15. On April 19, 2018, ActiveCare and EBF entered into that certain Settlement Agreement, whereby ActiveCare agreed to pay EBF $85,000.00 in full satisfaction of the EBF Judgment and EBF would release any and all liens or UCC security interests.

**Worldwide Capital Management, Inc.**

16. On August 24, 2017, ActiveCare entered into that certain Merchant Agreement with Worldwide Capital Management, Inc. ("**WCM**"), whereby ActiveCare purported to assign to WCM its "future accounts, contract rights, and other obligations arising from or relating to the payment of monies" from ActiveCare's customers and other third party payors (the "**WCM Merchant Agreement**"). Pursuant to the WCM Merchant Agreement, WCM advanced to ActiveCare $150,000.00, and ActiveCare agreed to pay WCM $2,044.00 per day from its cash receipts until a specified amount was paid.

17. In conjunction with entering into the WCM Merchant Agreement, ActiveCare and WCM entered into that certain Security Agreement (the "**WCM Security Agreement**"), whereby ActiveCare purported to grant WCM a security interest in certain of ActiveCare's collateral identified as then owned or thereafter acquired (a) accounts, chattel paper, documents,

equipment, general intangibles, instruments, and inventory; and (b) all proceeds thereof, to secure ActiveCare's performance of obligations under the WCM Merchant Agreement.

18. WCM did not file a UCC-1 financing statement against ActiveCare with the Delaware Secretary of State in connection with the WCM Security Agreement. [*See* Exhibit 2, Summary of UCC-1 Filings of ActiveCare].

19. Prior to the Petition Date, ActiveCare and WCM entered into a verbal payment plan, pursuant to which ActiveCare was making payments to WCM in satisfaction of amounts owed under the WCM Merchant Agreement.

**Fundrock, LLC**

20. On August 29, 2017, ActiveCare entered into that certain Merchant Agreement with Fundrock, LLC ("**Fundrock**", together with WCM, EBF, and CBSG, the "**Factors**"), whereby ActiveCare purported to assign to CBSG its "future accounts, contract rights, and other obligations arising from or relating to the payment of monies" from Debtor's customers and other third party payors (the "**Fundrock Merchant Agreement**", together with the WCM Merchant Agreement, the EBF Merchant Agreement, and the CBSG Factoring Agreement, the "**Factor Agreements**"). Pursuant to the Fundrock Merchant Agreement, Fundrock advanced to ActiveCare $80,000.00, and ActiveCare agreed to pay CBSG $1,332.00 per day from its cash receipts until a specified amount was paid.

21. In conjunction with entering into the Fundrock Merchant Agreement, ActiveCare and Fundrock entered into that certain Security Agreement (the "**Fundrock Security Agreement**"), whereby ActiveCare purported to grant Fundrock a security interest in certain of ActiveCare's collateral identified as then owned or thereafter acquired (a) accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory; and (b) all

6

64681261.3

proceeds thereof, to secure ActiveCare's performance of obligations under the Fundrock Merchant Agreement.

22. Fundrock did not file a UCC-1 financing statement against ActiveCare with the Delaware Secretary of State. [*See* Exhibit 2, Summary of UCC-1 Filings of ActiveCare].

23. Prior to the Petition Date, ActiveCare and Fundrock entered into a verbal payment plan, pursuant to which ActiveCare was making payments to Fundrock in satisfaction of amounts owed under the Fundrock Merchant Agreement.

**C.**     **The Security Agreement of the Pre-Petition Lender**

24. On February 19, 2016, ActiveCare entered into the Loan and Security Agreement with the Pre-Petition Lender and issued certain notes payable in connection therewith. Pursuant to the Loan and Security Agreement, the Pre-Petition Lender made available credit to ActiveCare in the maximum aggregate principal amount of $4,500,000. On March 13, 2017, the Pre-Petition Lender filed a UCC-1 financing statement against the Debtors with the Delaware Secretary of State. As more specifically set forth in the Pre-Petition Loan Agreement and the DIP Motion, these obligations are secured by first priority security interests in and liens on substantially all assets and properties of the Debtors. The factual background regarding the Pre-Petition Lender is set forth in detail in the DIP Motion and fully incorporated herein by reference.

**BASIS FOR RELIEF**

**A.**     **The Factors Do Not Have Perfected Security Interests in Debtors' Cash Collateral**

25. Perfection of each Factors' security interest is governed by the law of Delaware, ActiveCare's state of incorporation. The CBSG Factoring Agreement is governed by the laws of the Commonwealth of Pennsylvania Law. The EBF Merchant Agreement, the Fundrock Merchant Agreement, and the WCM Merchant Agreement are all governed by the laws of the State of New York. The commercial codes of both the Commonwealth of Pennsylvania and the

7

State of New York provide that "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection and the priority of a security interest in collateral." NY UCC § 9-301(a); 13 Pa.C.S.A. § 9301(a). The commercial codes further provide that "[a] registered organization which is organized under the law of a state is located in that state." NY UCC § 9-307(e); 13 Pa.C.S.A. § 9307(e). Accordingly, the law of the state of Delaware governs the filing location of a financing statement with respect to perfection and priority of a security interest of a Delaware corporation.

26. Under the Delaware UCC, for registered organizations, the filing location of the debtor is the state of organization, regardless of whether the debtor's actual business location or headquarters is in that state. *See* 6 Del. C. §§ 9-301, 9-307, and 9-310. Thus, the filing office for a Delaware corporation such as ActiveCare is the Delaware Secretary of State, even if the corporation is doing business in Utah and has substantially all of its assets in Utah.

27. As discussed above, each of the Factors did not file such a financing statement with the Delaware Secretary of State. [*See* Exhibit 2, Summary of UCC-1 Filings of ActiveCare]. Thus, any purported interest in Debtors' Cash Collateral held by a Factor is unperfected and subject to avoidance under the Bankruptcy Code.

**B.    The Factors Are Not Entitled to Adequate Protection Payments**

28. Section 364 of the Bankruptcy Code permits debtors to obtain secured or superpriority postpetition financing when unsecured credit is not available. 11 U.S.C. § 364(c). Bankruptcy courts, after notice and a hearing, may also authorize postpetition credit secured by a senior or equal lien on encumbered property if the debtor cannot obtain credit elsewhere and the interests of existing lienholders are adequately protected. *Id.* § 364(d).

29. Section 363(c)(2) of the Bankruptcy Code does not allow a debtor to use a secured creditor's cash collateral without consent or court approval. Section 363(e) of the

Bankruptcy Code provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." Under section 364(d)(1)(B), when deciding whether to authorize post-petition financing on a superpriority basis, the Court considers whether there is "adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." Accordingly, a creditor is not entitled to adequate protection unless it has an interest in the cash collateral and/or is the holder of a lien on property of the estate.

30. The holder of an unperfected security interest is not entitled to adequate protection of any purported interest in cash collateral. *See, e.g.*, *In re Chama, Inc.*, 265 B.R. 662, 669 (Bankr. D. Del. 2000) (holding that a creditor with an unperfected security interest is not entitled to adequate protection); *In matter of Shree Meldikrupa Inc.*, 2016 WL 235205, at *6 and 8 (Bankr. S.D. Ga. 2016) (finding that a creditor must have perfected its security interest in debtor's inventory and proceeds to have an interest in cash collateral as defined in section 363; "unperfected security interest is not such an interest that meets the definition of cash collateral"); *In re Wright Group,* 443 B.R. 795, 805 (Bankr. N.D. Ind. 2011) ("Implicit in the concept of 'cash collateral' is that a creditor has an enforceable security interest in the subject collateral. An enforceable security interest means one which the debtor could not avoid") (internal citation omitted).

31. An unperfected security interest is avoidable under both section 544(a)(1) of the Bankruptcy Code (governing avoidance rights of hypothetical lien creditor) and section 545(2) of the Bankruptcy Code (authorizing trustee's avoidance of unperfected liens).

32. Each of the Factors failed to perfect its security interest in ActiveCare's accounts receivables, and their interests are avoidable under the Bankruptcy Code. Under *In re Chama* and similar authority, the Factors have no interest in cash collateral entitled to adequate protection. For the same reason, the Factors are not the holders of any lien on property of the estate requiring adequate protection under section 364(d)(1) of the Bankruptcy Code.

33. Moreover, even if CBSG had a perfected security interest, the CBSG Subordination Agreement constitutes CBSG's consent to the DIP Facility and the granting of a priming lien in the Pre-Petition Lender's favor. CBSG agreed to any increase in the principal amount of the Pre-Petition Lender's loans to ActiveCare and modification of its security interest. For this additional reason, CBSG is not entitled to adequate protection of its alleged interest.

34. Debtors and the Pre-Petition Lender have agreed that the Pre-Petition Lender's interests are adequately protected. The Court need not consider whether any of the Factors claimed security interest in Debtors' assets is adequately protected because such interests are subject to avoidance and are not entitled to adequate protection. Similarly, the Factors' consent to use of Cash Collateral under section 363(c)(2) is not required because their security interests are unperfected. Accordingly, the Court should grant the DIP Motion and enter the Final DIP Order because all creditors with an interest in Debtors' Cash Collateral will be adequately protected as required by section 364(d)(1) of the Bankruptcy Code.

## **NOTICE**

35. The Debtors will serve the DIP Supplement on all entities that have filed a request for service of filings pursuant to Bankruptcy Rule 2002 and the Office of the United States Trustee.

**WHEREFORE**, the Debtors respectfully request that this Court enter the Final DIP Order and grant such other and further relief as is just and proper.

Dated: August 3, 2018
       Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

 */s/ Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
jedelson@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*