**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ACTIVECARE, INC., a Delaware corporation,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11659 (LSS)<br><br>(Jointly Administered)<br><br>RE: Docket Nos. 8 and 40 |

**SECOND INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, 503 AND 507: (A) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION TERM LOAN FINANCING; (B) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (C) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; (D) GRANTING ADEQUATE PROTECTION TO THE PRE-PETITION LENDER; (E) MODIFYING AUTOMATIC STAY; (F) SCHEDULING A FINAL HEARING; AND (G) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of ActiveCare, Inc. ("ActiveCare") and 4G Biometrics, LLC ("4G Biometrics"), as debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") for interim and final relief under Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d), 364(e), 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1 and 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an interim order (this "Interim Order"), *inter alia*:

[1] Pursuant to 11 U.S.C. § 342(c)(1), the Debtors in these cases, along with the last four digits of each Debtor's federal tax-identification number, are: ActiveCare, Inc. (8125); and 4G Biometrics, LLC (5678). The location of the Debtors' headquarters and the Debtors' service address is 1365 West Business Park Drive, Suite 100, Orem UT 84058.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(i) authorizing the Debtors to obtain priming senior secured post-petition financing on a superpriority basis pursuant to the terms and conditions of the Pre-Petition Loan Agreement and the Pre-Petition Loan Documents, with the exceptions set forth on Appendix A attached to this Interim Order (the "DIP Loan Agreement"; together with the agreements, documents, instruments and certificates executed by the Debtors or otherwise delivered in connection therewith, the "DIP Loan Documents"), by and among the Debtors and Partners For Growth IV, LP, a Delaware limited partnership ("PFG" or the "DIP Lender"), providing for, *inter alia*, a superpriority, new money, term loan credit facility providing for the borrowing of loans in accordance with the Approved Budget (as defined below) in an aggregate principal amount not to exceed $800,000 (the "DIP Facility");

(ii) authorizing the Debtors to execute and deliver the DIP Loan Agreement and the other DIP Loan Documents and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;

(iii) authorizing the use of Cash Collateral (defined below) as set forth herein;

(iv) pursuant to Section 364(c)(2) of the Bankruptcy Code, granting the DIP Lender, valid, enforceable, non-avoidable, automatically and fully perfected first priority liens on and security interests in all DIP Collateral (as defined below) that is not otherwise subject to a valid, perfected and unavoidable security interest or lien as of the Petition Date (as defined below) to secure any and all obligations owing under and with respect to the DIP Facility and the DIP Loan Documents (collectively, and including, without limitation, all "Obligations" as defined in the DIP Loan Agreement, the "DIP Obligations"), subject only to the Carve-Out (as defined below);

(v) pursuant to Section 364(c)(3) of the Bankruptcy Code, granting the DIP Lender, for the purpose of securing the DIP Obligations, valid, enforceable, non-avoidable, automatically and fully perfected junior liens on and security interests in all present and after-acquired DIP Collateral, wherever located, subject only to Permitted Prior Liens and the Carve-Out;

(vi) pursuant to Section 364(d)(1) of the Bankruptcy Code, granting DIP Lender, for the purpose of securing the DIP Obligations, valid, enforceable, non-avoidable, automatically and fully perfected first priority senior priming liens on and security interests in all DIP Collateral, wherever located, subject only to Permitted Prior Liens and the Carve-Out;

(vii) pursuant to Section 364(c)(1) of the Bankruptcy Code, granting all of the claims of the DIP Lender on account of the DIP Obligations allowed superpriority administrative expense claim status in each of the Cases with priority over any and all administrative expenses of the kind specified in or arising under any section of the Bankruptcy Code (including, without limitation, sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code), subject only to the Carve-Out;

(viii) providing adequate protection to the Pre-Petition Lender (as defined below) for any Diminution in Value (as defined below) of its interests in the Pre-Petition Collateral;

(ix) authorizing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Loan Documents as such amounts become due and payable, including, without limitation, application fees, origination fees, commitment fees, and the fees and disbursements of the respective attorneys, advisors, accountants and other consultants engaged by the DIP Lender, all to the extent provided in, and in accordance with the terms of, this Interim Order, the DIP Loan Agreement and the other DIP Loan Documents;

(x) modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order; and

(xi) scheduling a final hearing (the "Final Hearing") to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing;

and this Court having considered the Motion, the *Declaration of Mark Rosenblum, Chairman and Chief Executive Officer of Debtors', in Support of Chapter 11 Petitions and First Day Pleadings*, the exhibits attached thereto, the DIP Loan Documents, and the record established at the interim hearings held on July 17, 2018 and August 6, 2018 to consider the interim relief requested in the Motion (collectively, the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), and 9014 and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by this Court; and it appearing to this Court that granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estate, and their creditors, and is essential for the continued operation of the Debtors' businesses; and it further appearing that the Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code; and adequate protection being provided on account of the interests of certain holders of liens on the property of the Debtors' estates on which liens are to be granted;

and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THIS COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

A. *Petition Date*. On the date of the Motion (the "Petition Date"), each of the Debtors filed a separate, voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing these Cases.

B. *Debtors-in-Possession*. The Debtors continue to manage and operate their businesses and properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in any of the Cases.

C. *Jurisdiction and Venue*. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and the Debtors confirmed their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection with the Motion consistent with Article III of the United States Constitution. The statutory predicates for the relief set forth herein are Sections 105, 361, 362, 363, 364, 503 and 507 of the Bankruptcy Code, Rules 2002, 4001 and 9014 of the Bankruptcy Rules and the Local Rules. Venue for these

---

[3] Where appropriate in this Interim Order, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact pursuant to Bankruptcy Rule 7052.

Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D. *Committee Formation*. On July 26, 2018, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases (the "Committee").

E. *Debtors' Stipulations*. Subject to paragraph 44 hereof, the Debtor admit, stipulate, acknowledge, and agree that:

(i) Prior to the Petition Date, ActiveCare and Partners For Growth IV, L.P. (the "Pre-Petition Lender") entered into that certain Loan and Security Agreement, dated as of February 19, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "Pre-Petition Loan Agreement"). On July 2, 2018, 4G Biometrics executed a Joinder to Loan and Security Agreement, joining 4G Biometrics as a co-Borrower under the Pre-Petition Loan Agreement.

(ii) The Pre-Petition Loan Agreement, and the other agreements, documents, instruments and certificates executed by the Debtors or otherwise delivered in connection with the Pre-Petition Loan Agreement (collectively, the "Pre-Petition Loan Documents") are valid and enforceable in accordance with their terms against each of the Debtors, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance, subordination, recovery, disallowance, recharacterization or other challenge pursuant to applicable state or federal law (including, without limitation, the Bankruptcy Code).

(iii) Pursuant to the Pre-Petition Loan Documents, the Pre-Petition Lender agreed to provide the Debtors with revolving loans and term loans in an aggregate principal amount of up to $4,500,000. As of the Petition Date, the outstanding principal amount owed by the Debtors with respect to the revolving loans, term loans and other protective advances made under the Pre-Petition Loan Agreement was not less than $4,863,976.15 (collectively, together with any amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Pre-Petition Loan Documents, including, without limitation, accrued and unpaid interest, any fees, expenses and disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), indemnification obligations, any other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable in respect of any of the Debtors' obligations pursuant to the Pre-Petition Loan Documents, the "Pre-Petition Obligations").

(iv) The Pre-Petition Obligations are legal, binding and enforceable obligations of the Debtors and are not subject to any offset, defense, claim, counterclaim or any other diminution of any type, kind or nature whatsoever. No portion of the Pre-Petition

Obligations, or any funds previously paid to the Pre-Petition Lender is subject to avoidance, subordination, recovery, disallowance, recharacterization or other challenge pursuant to the Bankruptcy Code (including, but not limited to, Section 502(d) of the Bankruptcy Code) or applicable non-bankruptcy law.

(v) To secure the Pre-Petition Obligations, the Debtors granted to the Pre-Petition Lender first priority security interests in and liens on (collectively, the "Pre-Petition Liens"), substantially all assets and properties of the Debtors, as more specifically set forth in the Pre-Petition Loan Agreement, including, without limitation, all Accounts[4], all Inventory, all Equipment, all Collateral Accounts, including Deposit Accounts (including all of the Debtors' cash, the "Cash Collateral"), all General Intangibles (including without limitation all Intellectual Property); all Investment Property; all Other Property; and any and all claims, rights and interests in any of the above, and all guaranties and security for the any of the above, and all substitutions and replacements for, additions, accession, attachments, accessories, and improvements to, and proceeds (including proceeds of any insurance policies, proceeds of proceeds and claims against third parties) of any of and all of the above; and all Debtors' books relating to any of the above (collectively, and as defined as "Collateral" in the Pre-Petition Loan Agreement, the "Pre-Petition Collateral").

(vi) The Pre-Petition Lender filed: (a) UCC-1 Financing Statements regarding the Pre-Petition Collateral against the Debtors in the applicable state and/or county filing offices; and (b) notices of security interest regarding the Pre-Petition Collateral consisting of intellectual property in the applicable filing offices.

(vii) Subject to the Carve-Out and the provisions of paragraph 44 hereof, and excluding Complete Business Solutions Group and any other factoring entity subject to entry of a final order: (a) the Pre-Petition liens and security interests granted to the Pre-Petition Lender are senior in priority to all other liens on or security interests in the Pre-Petition Collateral, subject only to certain liens otherwise permitted by the Pre-Petition Loan Documents (to the extent any such permitted liens were existing, valid, enforceable, properly perfected, non-avoidable, not subject to subordination, recharacterization or other challenge and senior in priority to the Pre-Petition Liens as of the Petition Date, the "Permitted Prior Liens"); (b) the Pre-Petition Liens held by the Pre-Petition Lender are valid, binding, enforceable, non-avoidable and perfected; (c) the Pre-Petition Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the Pre-Petition Loan Documents (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code); (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Pre-Petition Liens or the Pre-Petition Obligations exist, and no portion of the Pre-Petition Liens or the Pre-Petition Obligations is subject to any challenge or defense, including, without limitation, avoidance, disgorgement, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no offsets, defenses, claims, objections, challenges, causes of action and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against

---

[4] Capitalized terms not otherwise defined in this sub-paragraph shall the meanings ascribed to them in the Pre-Petition Loan Documents.

the Pre-Petition Lender and/or any of its affiliates, parents, subsidiaries, controlling persons, agents, attorneys, advisors, professionals, officers, directors and employees; and (g) the Debtors have waived, discharged and released any right they may have to challenge any of the Pre-Petition Obligations, the priority of the Pre-Petition Obligations and the security for (and the priority of the liens securing) the Pre-Petition Obligations, and to assert any offsets, defenses, claims, objections, subordination, challenges, causes of action and/or choses of action against the Pre-Petition Lender and/or any of its affiliates, parents, subsidiaries, controlling persons, agents, attorneys, advisors, professionals, officers, directors or employees relating thereto.

(viii) The Debtors represent that all of the Debtors' cash as of the entry of this Interim Order, including the cash in their deposit accounts, wherever located, whether as original Pre-Petition Collateral or proceeds of other Pre-Petition Collateral, constitute the Pre-Petition Collateral of the Pre-Petition Lender.

(ix) The Debtors acknowledge and stipulate that Debtors are in default of their debts and obligations under the Pre-Petition Loan Documents.

F. *Terms and Conditions of Post-Petition Financing*. The Pre-Petition Loan Documents shall constitute the Post-Petition Loan Documents, with the exceptions set forth in Appendix A, attached hereto to this Interim Order. To the extent there is any express conflict between the terms of the Post-Petition Loan Documents and the terms of this Interim Order, the terms of this Interim Order shall control.

G. *Findings Regarding the Post-Petition Financing*.

(i) *Request for Post-Petition Financing*. The Debtors seek authority to: (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents; and (b) use the proceeds of the DIP Facility, in an aggregate amount not to exceed $800,000, on the terms described herein. At the Final Hearing, the Debtors will seek final approval of the DIP Loan Documents and the proposed post-petition financing arrangements contained therein pursuant to a proposed final order (the "Final Order"), which shall be in form and substance acceptable to the DIP Lender in all respects, and notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order. Good cause has been shown for the entry of this Interim Order.

(ii) *Priming of Pre-Petition Liens.* The priming of the liens granted to the DIP Lender, as contemplated by this Interim Order and the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors. The Pre-Petition Lender has consented to the priming of its liens and claims; however, only on the terms and conditions set forth in this Interim Order and the DIP Loan Agreement. As a result of the priming, the Pre-Petition Lender is entitled to receive adequate protection as set forth in this Interim Order pursuant to Sections 361, 363 and 364 of the Bankruptcy Code, for and to the extent of any diminution in the value of its interests in the Pre-Petition Collateral resulting from, among other things, the Debtors' use, sale or lease of such collateral, market value decline of such collateral, the imposition of the automatic stay, the subordination to the Carve-Out and the priming (to the extent provided for herein) of the Pre-Petition Liens (the "Diminution in Value").

(iii) *Need for Post-Petition Financing.* The Debtors' obtaining credit on an interim basis pursuant to the DIP Facility as provided for herein is necessary to avoid immediate and irreparable harm to the Debtors, their estates, their creditors and other parties-in-interest, and to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, to maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise to finance their operations through the Chapter 11 process requires the availability of working capital from the DIP Facility. Without the ability to use Cash Collateral and access the Interim Financing (as defined below) and the DIP Facility, the Debtors, their estates and their creditors would suffer immediate and irreparable harm. The Debtors do not have sufficient available sources of

working capital or financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility.

(iv) *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Lender on terms more favorable than provided for in the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain sufficient credit (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien, or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a post-petition basis is not otherwise available without granting the DIP Lender, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in the Interim Order and Final Order.

(v) *Use of Proceeds of the DIP Facility.* As a condition to entering into the DIP Loan Agreement, the extension of credit under the DIP Facility and the authorization to use the proceeds of the DIP Facility, the DIP Lender requires, and the Debtors have agreed, that the proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with an Approved Budget, solely for (a) working capital and other general corporate purposes of the Debtors, (b) payment of the costs of administration of the Cases, including, without limitation, the costs, fees and expenses incurred (I) in connection with the DIP Facility, and (II) by the Pre-Petition Lender in connection

with the Cases, in each case, to the extent such costs, fees and expenses are reimbursable pursuant to the terms of the Pre-Petition Loan Documents, as applicable, and (c) subject to paragraph 44, repayment of the Post-Petition cash collections in accordance with the DIP Loan Documents reducing the Post-Petition Obligations due to the DIP Lender.

H. *Adequate Protection*. The Pre-Petition Lender is entitled to receive adequate protection to the extent of any Diminution in Value of its interests in the Pre-Petition Collateral. Pursuant to Sections 361, 363 and 507(b) of the Bankruptcy Code and subject to the terms of this Interim Order, as adequate protection, the Pre-Petition Lender will receive the adequate protection liens and claims, and the professional and other expense reimbursements, as more fully set forth in paragraph 18 herein.

I. *New Loan*. The DIP Facility (including the Interim Financing) constitutes new loans and financial accommodations from the DIP Lender to the Debtors, separate and distinct from the loans and financial accommodations provided prior to the Petition Date under the Pre-Petition Loan Documents, and the proceeds of the DIP Facility may only be borrowed, and such proceeds may only be used in compliance with an Approved Budget, the DIP Loan Agreement and this Interim Order.

J. *Sections 506(c) and 552(b)*. In exchange for (i) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve-Out, and (ii) the Pre-Petition Lender's agreement to subordinate its Pre-Petition Liens to the DIP Liens and the Carve-Out, subject to entry of the Final Order providing for such relief, each of the Pre-Petition Lender and the DIP Lender shall receive: (a) a waiver of any "equities of the case" claims under Section 552(b) of the Bankruptcy Code; and (b) a waiver of the provisions of Section 506(c) of the Bankruptcy Code.

K. *Good Faith of the DIP Lender; Debtors' Business Judgment*.

(i) *Willingness to Provide Financing*. The DIP Lender has indicated a willingness to provide financing to the Debtors subject to: (a) the entry by this Court of this Interim Order and the Final Order; (b) approval by this Court of the terms and conditions of the DIP Facility and the DIP Loan Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Lender is extending post-petition credit to the Debtors pursuant to the DIP Loan Documents and this Interim Order in good faith, and that the DIP Lender's claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any

subsequent reversal, modification, vacatur, amendment, re-argument or reconsideration of this Interim Order or any other order for amounts loaned or advanced pursuant to this Interim Order.

(ii) *Business Judgment and Good Faith Pursuant to Section 364(e).* The extension of credit under the DIP Facility, governed by the terms and conditions of the DIP Loan Documents, the fees paid and to be paid thereunder, and this Interim Order as it relates to the Interim Financing: (a) are fair and reasonable; (b) are the best available to the Debtors under the circumstances; (c) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; and (d) are supported by reasonably equivalent value and fair consideration. The DIP Facility was negotiated in good faith and at arms' length between the Debtors and the DIP Lender. The credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, used and/or extended in good faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Interim Order.

L. *Notice*. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties-in-interest, including: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the parties included on the Debtors' consolidated list of their thirty (30) largest unsecured creditors; (iv) counsel to the DIP Lender; (v) counsel to Pre-Petition Lender; (vi) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (vii) all financial institutions at which the Debtors maintain deposit accounts; (x) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; and (xi) all other

parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 and applicable Local Rules or requesting to receive notice prior to the date hereof.

M. *Immediate Entry*. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Rules. Absent entry of this Interim Order, the Debtors' businesses, properties and estates will be immediately and irreparably harmed. This Court concludes that sufficient cause exists therefor and that entry of this Interim Order is in the best interest of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the continued operation of the Debtors' existing businesses.

N. *Necessity and Best Interest*. An immediate and critical need exists for the Debtors to obtain authority for use of Cash Collateral and to secure the DIP Facility to maintain the stability of their businesses. The Debtors (in consultation with their advisors) has determined that (1) the Approved Budget is reasonable and will allow the Debtors to operate in these Cases without the accrual of unpaid allowed administrative expenses; and (2) the Approved Budget includes all reasonable, necessary, and foreseeable expenses to be incurred for the period set forth therein. It is in the best interests of the Debtors' estates that they be allowed to use Cash Collateral and obtain Interim Financing on the terms and conditions set forth herein. The relief requested by the Motion is necessary to avoid harm to the Debtors' estates, and good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Interim Order. The terms of the use of Cash Collateral and the Interim Financing are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and constitute reasonably equivalent value and fair consideration.

Based upon the foregoing findings and conclusions, the Motion and the record made before this Court with respect to the Motion at the Interim Hearing, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. Interim Financing Approved. The Motion is granted to the extent provided herein, and the Interim Financing and use of Cash Collateral is authorized and approved, subject to the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

2. Objections Overruled. All objections to the interim relief sought in the Motion to the extent not previously withdrawn, overruled or resolved are hereby overruled on the merits and denied with prejudice.

3. Authorization to Use Cash Collateral. The Debtors are authorized to use Cash Collateral solely to pay the Post-Petition Obligations as set forth in Paragraph 4 of this Interim Order and otherwise in accordance with and pursuant to the terms and provisions herein; provided, however, that the Debtors will segregate $120,000 as adequate protection for Complete Business Solutions Group and the other factoring entities pending entry of a final order.

4. Use of Cash Collateral. Unless otherwise agreed to by the DIP Lender, the Debtors shall use the proceeds of the DIP Facility solely for operating working capital purposes and chapter 11 administrative costs in the amounts and otherwise in accordance with and for the purposes provided for in the Approved Budget.

**DIP Facility Authorization**

5. Authorization of the DIP Facility. The DIP Facility and the Interim Financing are hereby approved by this Interim Order. The Debtors are expressly and immediately authorized to execute and deliver the DIP Loan Documents, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Loan Documents,

and to deliver any and all instruments and documents that may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens. The Debtors are hereby authorized and directed to pay, in accordance with this Interim Order, the principal, interest, fees, expenses, legal fees and other amounts described in the DIP Loan Documents, as such become due and payable and without the need to obtain further approval of this Court, including, without limitation, commitment fees, application fees, origination fees, and the fees and disbursements that are chargeable and reimbursable under the DIP Loan Agreement. Each officer of the Debtors are hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive of such officer's authority to act in the name of and on behalf of the Debtors. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding obligations of the Debtors, enforceable against the Debtors and their estates in accordance with their terms.

6. Authorization to Borrow. Prior to the entry of the Final Order, and to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to borrow an aggregate principal amount of $570,000 (the "Interim Financing"), subject to the terms and conditions set forth in the DIP Loan Documents and this Interim Order.

7. DIP Obligations. Upon its entry, this Interim Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including, without limitation, any trustee appointed in any of the Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon entry of this Interim Order, the DIP Obligations will include all post-petition loans and any other post-

petition indebtedness or obligations, contingent or absolute, that may now or from time-to-time be owing by any of the Debtors to the DIP Lender under this Interim Order and the DIP Loan Documents, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts due under the DIP Facility as set forth herein. The DIP Obligations shall be due and payable as provided for herein and in the DIP Loan Documents.

8. [Reserved].

9. DIP Liens. To secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to Sections 361, 362, 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, as set forth more fully in the DIP Loan Documents, the DIP Lender, is hereby granted continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected post-petition, priming, first-priority security interests in and liens (collectively, the "Priming DIP Liens") on all assets or property of the Debtors, subject to the Carve-Out and Permitted Prior Liens, in each case, whether now owned by or owing to, or hereafter acquired by or arising in favor of the Debtors (including under any trade names, styles, or derivations thereof), and whether owned by the Debtors, and regardless of where located, including, without limitation: all Pre-Petition Collateral; all Accounts; all Inventory; all Equipment; all Collateral Accounts, including Deposit Accounts; all General Intangibles (including without limitation all Receivables and Intellectual Property); all Investment Property; all Other Property; any and all claims and/or causes of action existing under the Bankruptcy Code, including, but not limited to, subject to entry of the Final Order, claims and/or causes of action existing under Sections 542, 544, 547, 548, 549, and/or 550 of the Bankruptcy Code (collectively the "Avoidance Actions"); all equity interests in another Person owned by any Debtor; and any and all claims, rights and interests in any of the above, and all guaranties and security for any of the above, and all

substitutions and replacements for, additions, accessions, attachments, accessories, and improvements to, and proceeds (including, but not limited to, proceeds of proceeds, claims against third parties, any claim to any item referred to in this definition, and any claim against any third party for loss of, damage to or destruction of any or all of, the aforementioned collateral or for proceeds payable under, or unearned premiums with respect to, policies of insurance) of, any and all of the above, all Debtors' books relating to any of the above, and any and all products and proceeds of the foregoing in whatever form, including, but not limited to, cash, negotiable instruments and other instruments for the payment of money, chattel paper, security agreements and other documents; subject to entry of the Final Order providing for such relief; and to the extent not covered by the foregoing, all other assets or property of the Debtors (subject to any exclusions contained in the DIP Loan Agreement), whether tangible, intangible, real, personal or mixed, and all proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing (all of which being hereinafter collectively referred to as the "DIP Collateral"), as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the DIP Obligations.

10. Subject to entry of a final order, notwithstanding anything contained in paragraph 9 to the contrary, subject to entry of the Final Order providing for such relief, any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties, will be deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with

respect to the transactions granting post-petition liens in such leasehold interest or other license, contract or other agreement, or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lender or the Pre-Petition Lender in accordance with the terms of the DIP Loan Documents or this Interim Order. Subject to entry of the Final Order, all landlord agreements or bailee waivers to which any of the Pre-Petition Lender is a party shall be deemed amended to include the DIP Lender as a beneficiary thereunder, and such agreements shall thereafter be additionally enforceable by the DIP Lender against, and binding upon, each landlord or bailee party thereto in accordance with, and subject to, its respective terms and conditions until the DIP Obligations have been paid in full in cash and the DIP Loan Agreement shall have been terminated.

11. DIP Lien Priority.

(a) The DIP Lender, and for the purpose of securing the DIP Obligations, shall have the following DIP Liens:

(i) Pursuant to Section 364(c)(2) of the Bankruptcy Code, valid, enforceable, non-avoidable automatically and fully perfected first priority liens on and security interests in all DIP Collateral that is not otherwise subject to a valid, perfected and unavoidable security interest or lien as of the Petition Date, subject only to the Carve-Out;

(ii) Pursuant to Section 364(c)(3) of the Bankruptcy Code, valid, enforceable, non-avoidable, automatically and fully perfected junior liens on and security interests in all DIP Collateral, wherever located, subject only to Permitted Prior Liens, the Pre-Petition Liens and the Carve-Out;

(iii) Pursuant to Section 364(d)(1) of the Bankruptcy Code, valid, enforceable, non-avoidable, automatically and fully perfected first priority senior priming liens on and security interests in all DIP Collateral securing the Pre-Petition Obligations, subject only to Permitted Prior Liens.

(b) Except as expressly set forth herein, absent further order of the Court, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases, and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code, and/or upon the dismissal of any of the Cases or any Successor Cases, subject only to the Carve-Out. The DIP Liens shall not be subject to (i) Sections 510, 549 or 550 of the Bankruptcy Code, or (ii) subject to entry of the Final Order providing for such relief, Sections

506(c) or 551 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

12. Protection of DIP Lender' Rights. So long as there are any DIP Obligations outstanding, the Pre-Petition Lender shall: (a) have no right to, and take no action to, foreclose upon or recover in connection with the liens granted thereto pursuant to the Pre-Petition Loan Documents, this Interim Order or otherwise or seek or exercise any enforcement rights or remedies against any DIP Collateral or in connection with the debt and obligations underlying the Pre-Petition Loan Documents or the Adequate Protection Liens (as defined below), including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the Pre-Petition Loan Agreement); (b) be deemed to have consented to any release of DIP Collateral authorized under the DIP Loan Documents; (c) not file any further financing statements, trademark filings, copyright filings, mortgages, memoranda of lease, notices of lien or similar instruments, or otherwise take any action to perfect its security interests in the DIP Collateral unless, solely as to this clause (c), the DIP Lender files financing statements or other documents to perfect the liens granted pursuant to the DIP Loan Documents and/or this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the date of filing; and (d) deliver or cause to be delivered, at the Debtors' cost and expense (for which the Pre-Petition Lender shall be reimbursed for reasonable costs and expenses upon submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments (to the extent provided for herein) in favor of the DIP Lender or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of the Adequate Protection Liens on

any portion of the DIP Collateral subject to any sale or disposition approved or arranged for by the DIP Lender.

13. Superpriority DIP Claim. Subject to the Carve-Out, upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim (the "Superpriority DIP Claim"), in each of the Cases, for all of the DIP Obligations: (a) with priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, (i) administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, as provided under Section 364(c)(1) of the Bankruptcy Code, (ii) any claims allowed pursuant to the Pre-Petition Obligations and (iii) the Pre-Petition Lender Superpriority Claims; and (b) which shall at all times be senior to the rights of the Debtors and their estates (other than the Carve-Out), and any successor trustee or other estate representative to the extent permitted by law.

14. Extension of Credit. The DIP Lender shall have no obligation to make any loan or advance under the DIP Loan Documents, unless all of the conditions precedent to the making of such extension of credit under this Interim Order and the DIP Loan Documents have been satisfied in full or waived in accordance with the DIP Loan Documents.

15. Use of DIP Facility Proceeds.

(a) The proceeds of the DIP Facility will be used only for the following purposes, in each case in accordance with and subject to an Approved Budget and except as otherwise agreed by the DIP Lender: (i) working capital and other general corporate purposes of

the Debtors, (ii) payment of the costs of administration of the Cases, including, without limitation, the costs, fees and expenses incurred (A) in connection with the DIP Facility, and (B) by the Pre-Petition Lender in connection with the Cases, in each case, to the extent such costs, fees and expenses are reimbursable pursuant to the terms of the Pre-Petition Loan Documents, and (iii) subject to paragraph 44, repayment of the Post-Petition cash collections in accordance with the DIP Loan Documents reducing the Post-Petition Obligations due to the DIP Lender.

(b) Without in any way limiting the foregoing, no DIP Collateral, proceeds of the DIP Loans, any portion of the Carve-Out or any other amounts may be used directly or indirectly, without the prior written consent of the DIP Lender, by any of the Debtors, the Committee, if any, any other committee, or any trustee or other estate representative appointed in the Cases or Successor Cases, or any other person or entity (or to pay any professional fees, disbursements, costs or expenses incurred in connection therewith): (i) to seek authorization to obtain liens or security interests that are senior to, or on a parity with, the DIP Liens or the Superpriority DIP Claim (except to the extent expressly set forth in the DIP Loan Documents), the Adequate Protection Liens or the Pre-Petition Lender Superpriority Claims, or the Pre-Petition Liens; (ii) to investigate (including by way of examinations or discovery proceedings), prepare, assert, join, commence, support or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, any of the DIP Lender, the Pre-Petition Lender, or any of their controlling persons, affiliates or successors or assigns, and each of the respective officers, directors, employees, agents, attorneys, or advisors of each of the foregoing (collectively, the "Released Parties"), with respect to (A) any claims or causes of action arising under Chapter 5 of the Bankruptcy Code,

(B) any so-called "lender liability" claims and causes of action, (C) any action with respect to the validity, enforceability, priority and extent of, or asserting any defense, counterclaim, or offset to, the DIP Obligations, the Pre-Petition Lender Superpriority Claims, the DIP Liens, the DIP Loan Documents, the Pre-Petition Loan Documents or the Pre-Petition Obligations, (D) any action seeking to invalidate, modify, set aside, avoid or subordinate, in whole or in part, the DIP Obligations or the Pre-Petition Obligations, (E) any action seeking to modify any of the rights, remedies, priorities, privileges, protections and benefits granted to either (1) the DIP Lender hereunder or under any of the DIP Loan Documents, or (2) the Pre-Petition Lender under any of the Pre-Petition Loan Documents (in each case, including, without limitation, claims, proceedings or actions that might prevent, hinder or delay any of the DIP Lender' or the Pre-Petition Lender's assertions, enforcements, realizations or remedies on or against the DIP Collateral in accordance with the applicable DIP Loan Documents, Pre-Petition Loan Documents and the Interim and/or Final Orders), or (F) objecting to, contesting, or interfering with, in any way, the DIP Lender' and the Pre-Petition Lender's enforcement or realization upon any of the DIP Collateral once an Event of Default (as defined in the DIP Loan Agreement) has occurred; provided, however, that no more than $25,000 in the aggregate of the DIP Collateral, the Carve-Out and proceeds from the borrowings under the DIP Facility may be used by any Committee to investigate claims against the DIP Lender and/or liens granted to the Pre-Petition Lender under the Pre-Petition Loan Documents.

16. Termination Events. The occurrence of any of the following events (the "Termination Events", and on the date of such occurrence, the "Termination Date") shall constitute an Event of Default under the DIP Loan Agreement and a termination event under this Interim Order:

(a) any reversal, vacatur or stay of the effectiveness of this Interim Order or the Final Order (the "Orders") for a period of five (5) business days or more, without the express prior written consent of the DIP Lender;

(b) without the written consent of the DIP Lender, (i) dismissal of any of the Cases or conversion of any of the Cases to chapter 7 cases, or appointment of a chapter 11 trustee or examiner or other responsible officer with enlarged powers relating to the operation of the business of the Debtors in any of the Cases, which dismissal, conversion or appointment shall not have been reversed, stayed or vacated within five (5) business days, (ii) termination of the exclusive period for the Debtors to file a plan of reorganization in the Cases or the filing of a plan of reorganization in the Cases, or (iii) the Debtors shall seek or request the entry of any order to effect any of the events described in subclause (i) of this clause (b);

(c) the occurrence of any Event of Default (as defined in the DIP Loan Agreement), or the occurrence of any Default following the passage of any applicable notice or cure period set forth in the DIP Loan Agreement regardless of any acts or omissions of the DIP Lender that would otherwise have resulted in such Default not becoming an Event of Default by virtue of such passage of any applicable notice or cure period;

(d) the entry by this Court of an order granting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code sought by any party that materially adversely affects the Debtors' property in an amount in excess of $25,000, without the written consent of the DIP Lender;

(e) five (5) business days after written notice to the Debtors of the failure by the Debtors to deliver to the DIP Lender any of the documents or other information required to be delivered pursuant to the Orders when due (during which time the Debtors may cure) or any such documents or other information shall contain a misrepresentation of a material fact when made;

(f) except as set forth herein, five (5) business days after the failure by the Debtors to observe or perform any of the material terms or provisions contained in the Orders;

(g) the entry of an order of this Court granting any lien on or security interest in any of the DIP Collateral that is *pari passu* with or senior to the DIP Liens held by the DIP Lender on or as security interests in the DIP Collateral, the Adequate Protection Liens, the Pre-Petition Lender Superpriority Claims or the Pre-Petition Liens, or the Debtors shall seek or request the entry of any such order;

(h) the Debtors' creating or permitting to exist any other superpriority claim which is *pari passu* with or senior to the claims of the DIP Lender, the Adequate Protection Liens, the Pre-Petition Lender Superpriority Claims or the Pre-Petition Liens, except for the Carve-Out;

(i) the Debtors filing a pleading, or in any way support another party's pleading, seeking to modify or otherwise alter any of the terms and conditions set forth in the Orders without the prior written consent of the DIP Lender;

(j) the entry of an order of this Court amending, supplementing or otherwise altering any of the terms and conditions set forth in the Orders without the prior written consent of the DIP Lender;

(k) any of the Debtors uses the DIP Facility for any item other than those set forth in the Approved Budget or the Carve-Out, except as agreed in writing in advance by the DIP Lender;

(l) any of the Debtors (or any party with the support of any of the Debtors) shall file a plan of reorganization in any of the Cases if the filing of such plan is made without the prior written consent of the DIP Lender;

(m) any uninsured judgments are entered with respect to any post-petition liabilities against any of the Debtors or any of their respective properties in a combined aggregate amount in excess of $50,000 unless stayed, vacated or satisfied for a period of twenty (20) calendar days after entry thereof;

(n) the failure of the Debtors to meet any of the following milestones, unless extended or waived by the DIP Lender:

(i) to obtain entry of the Interim Order in form and substance satisfactory to the DIP Lender in its sole discretion on or before the second (2nd) day after the Petition Date;

(ii) to obtain entry of the Final Order in form and substance satisfactory to the DIP Lender in its sole discretion on or before on or before the thirty-fifth (35th) day after the Petition Date;

(iii) to file a motion with the Court seeking approval of the Sale Order on or before the seventh (7th) day after the Petition Date;

(iv) to obtain the scheduling of the date for the hearing on the Bid Procedures Order on or before the twenty first (21st) day after the Petition Date;

(v) to obtain entry of an order by the Court approving bidding procedures for the sale of substantially all of the Debtors' assets (the "Bidding Procedures Order") in form and substance satisfactory to the DIP Lender on or before the twenty third (23rd) day after the Petition Date;

(vi) to conduct an auction for the sale of substantially all of the Debtors' assets pursuant to the Bidding Procedures Order on or before the third day before the Sale Hearing (as defined below);

(vii) to hold a sale hearing ("Sale Hearing") for the approval of the sale of substantially all of the Debtors' assets pursuant to the Bidding Procedures Order on or before the sixtieth (60th) day after the Petition Date; and

(viii) to obtain entry of an order by the Court approving the sale of substantially all of the Debtors' assets ("Sale Order") on or before the sixtieth (60th) day after the Petition Date;

(o) the Debtors seek to sell any of their assets outside the ordinary course of business, unless (i) the proceeds of such sale are used to indefeasibly pay the DIP Obligations in full in cash, and to the extent there are remaining proceeds thereafter, are used to indefeasibly pay the Pre-Petition Obligations at closing, and (ii) such sale is pursuant to bidding procedures and a sale motion approved by the DIP Lender;

(p) the Debtors filing of a plan of re-organization in the Cases that do not propose to indefeasibly repay the DIP Obligations in full in cash, unless otherwise consented to by the DIP Lender;

(q) any of the Debtors (or any party with the support of any of the Debtors) shall challenge the validity or enforceability of any of the DIP Loan Documents or the Pre-Petition Loan Documents; and

(r) any of the Debtors shall make any a payment (by way of adequate protection or otherwise) of principal or interest or otherwise on account of any pre-petition indebtedness, trade payables or other pre-petition claims against any Debtor, unless expressly provided in the Orders.

**Authorization to Use Proceeds of DIP Facility and Adequate Protection**

17. Authorization to Use Proceeds of DIP Facility. Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with an Approved Budget, the Debtors are authorized to use the proceeds of the DIP Facility in accordance with this Interim Order. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, except as

permitted in this Interim Order and the DIP Loan Documents, and in accordance with an Approved Budget.

18. Adequate Protection.

(a) Pre-Petition Lender's Adequate Protection Liens and Claims. Pursuant to Sections 361, 363(e), 364(d), and 507(b) of the Bankruptcy Code, as adequate protection of the interests of the Pre-Petition Lender, the Debtors hereby grant to the Pre-Petition Lender, the following:

(i) continuing, valid, binding, enforceable and perfected post-petition "replacement" liens on the Pre-Petition Collateral to the extent of any post-petition Diminution in Value of the Pre-Petition Lender's interest in the DIP Collateral (the "Adequate Protection Liens"), which liens will be junior to the DIP Liens, the Permitted Prior Liens, the Pre-Petition Liens and the Carve-Out;

(iii) an allowed superpriority administrative expense claim in each of the Cases to the extent of any post-petition Diminution in Value of the Pre-Petition Lender's interest in the Pre-Petition Collateral (the "the Pre-Petition Lender Superpriority Claims"), which claims will be junior only to the DIP Obligations, the Superpriority DIP Claim, the Carve-Out and, with respect to the DIP Collateral, any validly perfected secured claim, and be payable from and have recourse to all assets and property of the Debtors.

(b) Adequate Protection Payments. As further adequate protection for the Pre-Petition Lender, the Debtors are authorized to provide adequate protection in the form of current interest payments and, any and all reasonable and documented (in summary form) out-of-pocket fees, costs and expenses of the Pre-Petition Lender (including all reasonable fees, costs,

disbursements and expenses of their outside counsel), subject to the Approved Budget. Subject to the Carve-Out and paragraphs 36(b) and 44, the payments set forth in this paragraph are not and shall not be subject to any offset, defense, claim, counterclaim or diminution, or recovery, of any type, kind or nature whatsoever.

(c) Access to Books and Records. As further adequate protection for the Pre-Petition Lender, the Debtors shall provide the Pre-Petition Lender with access to the Debtors' books and records and such financial reports as are provided to the DIP Lender.

19. Adequate Protection Reservation. The receipt by the Pre-Petition Lender of the adequate protection provided pursuant to paragraph 18 of this Interim Order shall not be deemed an admission that the interests of the Pre-Petition Lender are indeed adequately protected. Further, this Interim Order shall not prejudice or limit the rights of the Pre-Petition Lender to seek additional adequate protection.

20. Reporting. Until the DIP Obligations are indefeasibly paid in full, the Debtors shall provide to the DIP Lender: (i) monthly financial statements of the Debtors and their subsidiaries within thirty (30) days of month-end, certified by the Debtors' chief financial officer; (ii) quarterly consolidated financial statements of the Debtors within forty-five (45) days of fiscal quarter-end, certified by the Debtors' chief financial officer; (iii) following delivery of the Initial Approved Budget (as defined below), and for each four-week period thereafter during the Cases, an updated 13-week cash flow forecast, in each case, in form and substance satisfactory to the DIP Lender (each such forecast approved by the DIP Lender, an "Approved Budget") for the subsequent 13-week period consistent with the form of the Initial Approved Budget; and (iv) beginning on the second Tuesday following the date on which all conditions precedent to the effectiveness of the DIP Facility have been satisfied or waived as provided

therein (such date, the "Closing Date"), and on each Tuesday following, a variance report (the "Variance Report") setting forth actual cash receipts and disbursements of the Debtors for the prior week and setting forth all the variances, on a line-item and aggregate basis, from the amount set forth for such week as compared to the Initial Approved Budget or the most recently Approved Budget delivered prior to such Variance Report (as applicable) on a weekly and cumulative basis (which shall be subject to the variances set forth in the DIP Loan Documents), and each such Variance Report shall include explanations for all material variances and shall be certified by the chief financial officer or chief restructuring officer of the Debtors. The Debtors will promptly provide notice to counsel to the DIP Lender, for prompt distribution to the DIP Lender, of any Material Adverse Effect (as defined in the DIP Loan Agreement).

21. Additional Reports and Information. Further, the Debtors will provide to the DIP Lender, such other reports and information as may be reasonably requested by the DIP Lender. In addition, the Debtors' accountants, financial advisors and consultants are hereby authorized to cooperate, consult with, and provide to the DIP Lender, all such information as may be reasonably requested with respect to the businesses, results of operations, and financial condition of the Debtors.

22. Section 507(b) Reservation. Subject to the Carve-Out, nothing herein shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided hereunder is insufficient to compensate for any Diminution in Value during any of the Cases.

23. Amendment of the DIP Loan Documents or this Interim Order. Except for actions expressly permitted to be taken by the DIP Lender, no amendment, modification, termination or waiver of any provision of the DIP Loan Documents or this Interim Order or any

other related documents, or any consent to any departure by any of the Debtors therefrom, shall in any event be effective unless the same shall be in writing (it being understood that any necessary signatures may be on a document consenting to such amendment, modification, termination, or waiver) signed by the Debtors and the DIP Lender. In the event of any such amendment, modification, termination or waiver, the Debtors shall provide notice thereof to the Pre-Petition Lender, the DIP Lender, the Committee (if any) and the U.S. Trustee no less than three (3) business days prior to the effective date thereof (or such shorter period as to which such parties may agree).

24. Budget.

(a) The Debtors have prepared and delivered an initial 13-week budget to the DIP Lender (the "Initial Approved Budget"), which reflects the Debtors' anticipated cumulative cash receipts, expenditures and net cash flow on a weekly basis and all necessary and required cumulative expenses that the Debtors, in consultation with any financial advisors engaged by the DIP Lender, expect to incur during each week of the Initial Approved Budget. The Debtors' actual aggregate disbursements shall not exceed (i) the aggregate amount of disbursements in the Initial Approved Budget or any subsequently Approved Budget, as applicable, for the applicable period by more than the Permitted Variance (as defined below), and (ii) actual aggregate cash receipts (excluding proceeds of the DIP Facility that may be deemed a receipt) during the applicable period shall not be less than the aggregate amount of such cash receipts in the Initial Approved Budget or any subsequently Approved Budget, as applicable, for such period by more than the Permitted Variance; provided, however, that a Default or Event of Default (each as defined in the DIP Loan Agreement) shall not be deemed to occur on account of the failure to meet one of such aggregate cash receipts covenants if the Debtors receive sufficient additional

receipts within three (3) business days after the applicable date of determination that, when added to the receipts as of the applicable date of determination, would enable the Debtors to satisfy such covenant.

(b) "Permitted Variance" will mean (i) any favorable variance, (ii) an unfavorable variance of no more than 5.00% with respect to each week after the Closing Date and on a rolling three-week basis with respect to each subsequent week (each such period, a "Testing Period"). The Permitted Variance with respect to each Testing Period shall be determined and reported to the DIP Lender not later than the Tuesday immediately following each such Testing Period. Subject to paragraph 24(a) above, variances, if any, from the Initial Approved Budget or any subsequently Approved Budget, and any proposed changes to the Initial Approved Budget or any Approved Budget, shall be subject to the approval of the DIP Lender.

(c) The Initial Approved Budget shall be modified or supplemented from time to time consistent with the provisions of paragraph 20 hereof (i.e., a revised 13-week cash flow forecast that must be approved by the DIP Lender), in each case without further notice, motion or application to, order of, or hearing before, this Court. For all purposes hereunder, (i) the Initial Approved Budget shall constitute an "Approved Budget," and (ii) any Approved Budget shall replace any prior Approved Budgets (including the Initial Approved Budget) for all Testing Periods ending after the approval of such Approved Budget.

25. Budget Compliance. Except as otherwise provided herein or approved by the DIP Lender, the Debtors will not, and will not permit any subsidiary directly or indirectly to, use any cash or the proceeds of the DIP Facility in a manner or for a purpose other than those consistent with an Approved Budget and this Interim Order.

26. Modification of Automatic Stay. The automatic stay imposed by Section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit: (a) the Debtors to grant the DIP Liens and the Superpriority DIP Claims, and to perform such acts as the DIP Lender may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to take all appropriate action to grant the Adequate Protection Liens and the Pre-Petition Lender Superpriority Claims set forth in paragraph 15 hereof, and to take all appropriate action to ensure that the Adequate Protection Liens granted hereunder are perfected and maintain the priority set forth herein; (c) the Debtors to incur all liabilities and obligations to the Pre-Petition Lender and the DIP Lender as contemplated under this Interim Order; (d) the Debtors to pay all amounts referred to, required under, in accordance with, and subject to the DIP Loan Documents and this Interim Order; (e) to the extent otherwise provided in this Order, the DIP Lender and the Pre-Petition Lender to exercise, upon the occurrence and during the continuance of any Event of

Default under the DIP Loan Documents, all rights and remedies provided for in the DIP Loan Documents or the Pre-Petition Loan Documents and take any or all actions provided therein; (f) the Debtors to execute any amendments to the DIP Loan Documents agreed to in writing with the DIP Lender; and (g) the implementation of the terms of this Interim Order.

27. Perfection of DIP Liens and Post-Petition Liens. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection and priority of all liens granted herein, including, without limitation, the DIP Liens and the Adequate Protection Liens, without the necessity of execution, filing or recording any financing statement, mortgage, notice or other instrument or document that may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable law) such liens, or to entitle the Pre-Petition Lender or the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, each of the DIP Lender and the Pre-Petition Lender are authorized to execute, file or record and the DIP Lender may require the execution, filing or recording, as each, in its sole discretion deems necessary, such financing statements, mortgages, notices of lien, and other similar documents to perfect in accordance with applicable law or to otherwise evidence the DIP Liens and/or Adequate Protection Liens, as applicable, and all such financing statements, mortgages, notices, and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors are authorized to execute and deliver promptly upon demand to the DIP Lender or the Pre-Petition Lender all such financing statements, mortgages, notices, and other documents as the DIP Lender or the Pre-Petition Lender, as applicable, may reasonably

request. DIP Lender or the Pre-Petition Lender, in their respective discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien, or similar instruments.

28. After-Acquired Property. Subject to entry of a final order, and except as otherwise provided in this Interim Order, pursuant to Section 552(a) of the Bankruptcy Code, all property acquired by the Debtors after the Petition Date, including, without limitation, all DIP Collateral pledged or otherwise granted to the DIP Lender pursuant to this Interim Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Debtors.

29. Proceeds of Subsequent Financing. If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in any of the Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Sections 364(b), (c), or (d) of the Bankruptcy Code at any time prior to the indefeasible payment in full in cash of all of the Pre-Petition Obligations and the indefeasible payment in full in cash of all of the DIP Obligations, the satisfaction of the Superpriority DIP Claims, and the termination of the DIP Lender's obligations to extend credit under the DIP Facility and this Interim Order, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, then all of the cash proceeds derived from such credit or indebtedness shall immediately be turned over to the DIP Lender to be applied, subject to the Carve-Out, the Permitted Prior Liens, then paid to: (a) the DIP Obligations, and (b) after the full satisfaction of the DIP Obligations, to

the outstanding amounts owing in accordance with the Pre-Petition Loan Documents (i.e., the Pre-Petition Obligations) or as otherwise ordered by the Bankruptcy Court.

30. Maintenance of DIP Collateral. Until the indefeasible payment in full in cash of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under this Interim Order and the DIP Loan Documents, as applicable; and (b) maintain the cash management system in effect as of the Petition Date, as modified by this Interim Order and any order that may be entered by this Court in accordance with this Interim Order.

31. Insurance Policies. The Debtors shall continue to maintain all property, operational and other insurance as required and as specified in the DIP Loan Documents. Upon entry of this Interim Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

32. Disposition of, or New Liens on, DIP Collateral. Other than in the ordinary course of business, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral unless such sale, transfer, lease, encumbrance or other disposition results in payment in full of the DIP Obligations and Pre-Petition Obligations in cash at closing, without the prior written consent of the DIP Lender (and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Lender, except as otherwise provided for herein), or (ii) is expressly permitted by the DIP Loan Documents. Absent further order of this Court, the Debtors shall not create or permit to exist any post-petition liens or encumbrances on any of their assets or property except any post-petition liens allowed pursuant to the DIP Loan Documents.

33. DIP Termination Date. On the Termination Date all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility and the Debtors authorization for the use of Cash Collateral will terminate.

34. Rights and Remedies Upon Termination Event. Notwithstanding the provisions of Section 362 of the Bankruptcy Code, and without order of or application or motion to this Court, immediately upon the occurrence and during the continuance of a Termination Event: (a) the DIP Lender shall, by written notice to the Debtors, their counsel, the U.S. Trustee and any counsel for the Committee, if any, terminate the DIP Facility, declare the DIP Obligations to be immediately due and payable and, subject to the immediately following clause (b), exercise all rights and remedies under the DIP Loan Documents and this Interim Order; and (c) the automatic stay provisions of Section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the DIP Lender to exercise all rights and remedies provided for in the DIP Loan Documents, including to take any or all of the following actions, without further order of or application to this Court (as applicable): (i) immediately terminate the Debtors' limited use of any Cash Collateral; (ii) cease making any extensions of credit under the DIP Facility to the Debtors; (iii) declare all DIP Obligations to be immediately due and payable; (iv) immediately set-off any and all amounts in accounts maintained by the Debtors with the DIP Lender, if any, against the DIP Obligations, or otherwise enforce any and all rights against the DIP Collateral in the possession of any of the applicable DIP Lender, including, without limitation, disposition of the DIP Collateral solely for application towards the DIP Obligations; and (v) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the DIP Loan Documents or applicable law to effect the repayment of the DIP Obligations; provided, however, that prior to the exercise of any right in clauses (i), (v) or (vi) the DIP Lender shall be required to

provide five (5) business days written notice (the "Remedies Notice Period") to the Debtors, the U.S. Trustee and the Committee of the DIP Lender's intent to exercise such rights and remedies; provided, further, that none of the Debtors, the Committee or any other party-in-interest shall not have the right to contest the enforcement of the remedies set forth in this Interim Order and the DIP Loan Documents on any basis other than an assertion that a Termination Event has not occurred or has been cured within the cure periods expressly set forth herein or in the applicable DIP Loan Documents. During the Remedies Notice Period, the Debtors, the U.S. Trustee and the Committee shall be entitled to seek an emergency hearing with the Court in connection therewith. With respect to the aforementioned clauses (i), (v) and (vi), unless the Court determines during the Remedies Notice Period that a Termination Event has not occurred, or to the extent of an applicable cure period was cured within the applicable cure period as provided under the DIP Loan Documents or as otherwise ordered by the Court: (A) the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Lender shall be permitted to exercise all rights and remedies set forth herein; (B) the Debtors shall cooperate fully with the DIP Lender in its exercise of rights and remedies, whether against the DIP Collateral or otherwise; and (C) the Debtors shall waive any right to seek relief under the Bankruptcy Code, including under Section 105 thereof, to the extent such relief would restrict or impair the rights and remedies of the DIP Lender set forth in the Interim and/or Final Orders and in the DIP Loan Documents. Any remedies taken affecting any leases or premises subject to any leases shall be in accordance with applicable federal and state law, the Bankruptcy Code, the governing leases, consent of the applicable landlord (if required), or as otherwise ordered by the Court.

35. Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order. Based on the record, the DIP Lender has acted in good faith in connection with the DIP Facility, the Interim Financing, and with this Interim Order, and its reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code for any amounts loaned or advanced under this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Lender is entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to the DIP Lender arising prior to the effective date of any such modification, amendment, or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein.

36. DIP and Other Expenses.

(a) The Debtors are authorized to pay promptly all (i) reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of the DIP Lender in connection with the negotiations, preparation, execution and delivery of the DIP Loan Documents and the funding of all extensions of credit under the DIP Facility, including, without limitation, all due diligence, transportation, computer, duplication, messenger, audit, insurance, appraisal, valuation and consultant costs and expenses, and all search, filing and recording fees, incurred or sustained by the DIP Lender and its counsel and professional advisors in connection

with the DIP Facility, the DIP Loan Documents or the transaction contemplated thereby, the administration of the DIP Facility and any amendment or waiver of any provision of the DIP Loan Documents, and (ii) without duplication, reasonable and documented (in summary form) out-of-pocket fees, costs, disbursements and expenses of each of the DIP Lender all reasonable fees, costs, disbursements and expenses of one firm of outside counsel and one firm of local counsel engaged by the DIP Lender in connection therewith) and professional advisors in connection with the enforcement of any rights and remedies under the DIP Loan Documents.

(b) The payment of fees, costs, disbursements and expenses set forth in paragraph 18(b), this paragraph 36 and paragraph 37 shall be made within ten (10) days after the receipt by the Debtors, the Committee and the U.S. Trustee (the "Review Period") of summary invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work product doctrines), including a description of the services provided and the expenses incurred by the applicable professional arising before or after the Petition Date, as applicable. The Debtors, the Committee and the U.S. Trustee may preserve their right to dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, (i) the Debtors pay in full the Invoiced Fees, excluding the Disputed Invoiced Fees; and (ii) the Debtors, the Committee or the U.S. Trustee files with the Court a motion or other pleading, on at least ten (10) calendar days prior written notice to the applicable parties of any hearing on such motion or other pleading, which must contain a specific basis for the objection to the Disputed Invoiced Fees and quantification of the undisputed amount of the fees and expenses invoiced. Failure to object with specificity or to quantify the undisputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice. The Debtors shall pay in full any such Disputed Invoiced Fees upon the resolution of such dispute or upon further order of

the Court. None of the Invoiced Fees shall be subject to this Court's approval or required to be maintained in accordance with the U.S. Trustee Guidelines, and no recipient of any payment on account thereof shall be required to file with respect thereto any interim or final fee application with this Court. Payment of Invoiced Fees shall not be delayed based on any objections thereto, and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final non-appealable order of this Court.

37. Indemnification. Subject to the investigation rights set forth in paragraph 44 hereof, the Debtor shall jointly and severally indemnify and hold harmless the DIP Lender, any of its affiliates and each of the respective officers, directors, employees, controlling persons, agents, advisors, attorneys and representatives of each in their respective capacities as such (each, an "Indemnified Party"), from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, reasonable fees and disbursements of counsel), joint or several, that may be incurred by or asserted or awarded against any Indemnified Party, in each case arising out of or in connection with or relating to any investigation, litigation or proceeding or the preparation of any defense with respect thereto, arising out of or in connection with or relating to the DIP Facility, the DIP Loan Documents or the transactions contemplated thereby, or any use made or proposed to be made with the proceeds of the DIP Facility, whether or not such investigation, litigation or proceeding is brought by any Debtor or any subsidiary, any shareholder or creditor of the foregoing, an Indemnified Party or any other person, or an Indemnified Party is otherwise a party thereto and whether or not the transactions contemplated hereby or under the DIP Loan Documents are consummated, except, with respect to any Indemnified Party, to the extent such claim, damage, loss, liability or expense is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the

bad faith of, gross negligence of, willful misconduct of, or breach of contract by, such Indemnified Party or any of such Indemnified Party's affiliates or their respective principals, directors, officers, employees, representatives, agents, attorneys or third party advisors. No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort or otherwise) to any Debtor or any subsidiary or any shareholder or creditor of the foregoing for or in connection with the transactions contemplated hereby, except, with respect to any Indemnified Party, to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from the bad faith of, gross negligence of, willful misconduct of, or breach of contract by, such Indemnified Party or any of such Indemnified Party's affiliates or their respective principals, directors, officers, employees, representatives, agents, attorneys or third party advisors. The foregoing indemnity includes indemnification for the DIP Lender's exercise of discretionary rights granted under this Interim Order or the DIP Loan Documents. In all such litigation or the preparation therefor, subject to paragraph 36, the DIP Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

38. Proofs of Claim. The DIP Lender and the Pre-Petition Lender shall not be required to file proofs of claim in any of the Cases for any claim allowed herein. Any proof of claim filed by the DIP Lender or the Pre-Petition Lender shall be deemed to be in addition to (and not in lieu of) any other proof of claim that may be filed by any such persons.

39. Rights of Access and Information. Without limiting the rights of access and information afforded the Pre-Petition Lender or the DIP Lender under this Interim Order, the DIP Loan Documents and/or the Pre-Petition Loan Documents, the Debtors shall afford representatives, agents and/or employees of the DIP Lender reasonable access to the Debtors'

premises and their books and records and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors shall authorize their independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the DIP Lender all such information as may be reasonably requested with respect to the businesses, results of operations, and financial condition of the Debtors.

40. Access to DIP Collateral/No Landlord's Liens. Subject to entry of the Final Order providing for such relief and subject to applicable state law, notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Lender contained in this Interim Order, or otherwise available at law or in equity, and subject to the terms of this Interim Order, upon written notice to the landlord of any leased premises that an Event of Default has occurred and is continuing under the DIP Facility, the DIP Lender may, subject to any separate agreement by and between such landlord and the DIP Lender (a "Separate Agreement"), enter upon any leased premises of the Debtors for the purpose of exercising any remedy with respect to DIP Collateral located thereon and, subject to any Separate Agreement, shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from such landlord; provided, however, that, subject to any such Separate Agreement, the DIP Lender shall only pay rent of the Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Lender, calculated on a per diem basis. Nothing herein shall require the DIP Lender to assume any lease as a condition to the rights afforded to the DIP Lender in this paragraph.

41. Application of Proceeds Upon Sale of Debtors or Debtors' Businesses. Upon the consummation of the sale of substantially all of the Debtors' (or any Debtor's) assets and the

entry of the Sale Order by the Court, all proceeds from such sale shall immediately be turned over to the DIP Lender to be applied to, subject to the Carve-Out and the Permitted Prior Liens: (a) *first*, the DIP Obligations, until the full satisfaction thereof, and (b) *then* to the outstanding amounts owing in accordance with the Pre-Petition Loan Documents (i.e., the Pre-Petition Obligations).

42. Carve-Out.

(i) For the purposes of this Interim Order, the "Carve-Out" shall mean (a) the payment of allowed professional fees and disbursements accrued by professions retained pursuant to Sections 327 or 1103(a)(i) of the Bankruptcy Code, subject to the amounts set forth in the Approved Budget plus any Permitted Variance: (i) prior to the earlier of (1) the date on which the DIP Lender provides written notice (the "Carve-Out Trigger Notice") to Debtors that either an Event of Default has occurred or the DIP Loan Agreement is terminated or (2) the Termination Date; and (ii) in an amount not to exceed $25,000 on account of such professional fees and disbursements incurred by Debtors following the Carve-Out Trigger Notice (provided nothing herein shall be construed to (A) provide for double payment of any fees or disbursements; (B) alter the procedures for the approval of professional compensation as set forth under the Bankruptcy Code and the rules of the Bankruptcy Court; (C) alter the ability of any party to object to such fees and disbursements or (D) extend the super-priority status of the Carve-Out to any portion unused by bankruptcy counsel); and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court. For the avoidance of doubt and notwithstanding anything to the contrary herein or elsewhere, the Carve-Out shall be senior to all liens securing the DIP Obligations, the Pre-Petition

Obligations, the Adequate Protection Liens and all claims and any and all other forms of adequate protection, liens or claims securing the DIP Obligations, or the Pre-Petition Obligations granted herein to the Pre-Petition Lender or the DIP Lender. The DIP Lender's Priming DIP Lien and Superpriority DIP Claim shall attach to any unused portion of the Carve-Out.

(ii) Subject to paragraph 44 herein, notwithstanding anything to the contrary herein, neither the Carve-Out nor any other DIP Collateral may be used for the payment of any fees or disbursements incurred in connection with: (a) attempting to modify or otherwise alter any of the terms and conditions set forth in this Interim Order, without the prior written consent of the DIP Lender; (b) asserting, alleging, bringing, supporting any claim or cause of action, or the initiation or prosecution of any claim or action against the Pre-Petition Lender or the DIP Lender, including any causes of action under Chapter 5 of the Bankruptcy Code or state law of any type or nature whatsoever, against any of the Pre-Petition Lender or the DIP Lender, including, without limitation, challenging the amount, extent, priority, validity, perfection or enforcement of the Pre-Petition Obligations, the DIP Obligations, or any of the Pre-Petition Lender' or the DIP Lender's security interests and liens or to recover any funds previously paid to the Pre-Petition Lender or the DIP Lender; or (c) bringing or asserting any claims or causes of actions against the Pre-Petition Lender or the DIP Lender under the Pre-Petition Loan Documents or the DIP Facility (as the case may be), or their respective advisors or agents, including formal discovery proceedings in anticipation thereof, and/or challenging any lien, security or interest of Pre-Petition Lender under the Pre-Petition

Loan Documents in the Pre-Petition Collateral or of the DIP Lender under this Interim Order in the DIP Collateral.

43. Payment of Compensation. So long as an un-waived Termination Event has not occurred, and to the extent permitted under this Interim Order (including the dollar caps provided in paragraphs 15(b) and 42 hereof), the Debtors are authorized to pay fees and expenses allowed and payable, as applicable, by any interim, procedural, or final order of this Court (that has not been vacated or stayed, unless the stay has been vacated) under Sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable in accordance with the Approved Budget.

44. Investigation Rights. The Committee and any other parties in interest (other than the Debtors) are permitted to undertake a Challenge (as defined below). Any party (other than the Debtors, which have waived any Challenge rights), including the Committee, shall have a maximum of sixty (60) calendar days after the appointment of the Committee, if any, but in no event later than the earlier to occur of (x) seventy-five (75) calendar days from entry of the Interim Order and (y) subject to entry of a final order, the hearing approving the sale of substantially all of the Debtors' assets (the "Ch. 11 Challenge Period") to investigate and commence an adversary proceeding or contested matter, as required by the applicable Bankruptcy Rules, and challenge (each, a "Challenge") the findings, the Debtors' stipulations, or any other stipulations contained in this Interim Order or any Final Order, including, without limitation, any challenge to the validity, priority or enforceability of the Pre-Petition Liens, or to assert any claim or cause of action against the Pre-Petition Lender arising under or in connection with the Pre-Petition Loan Documents or the Pre-Petition Obligations, as the case may be, whether in the nature of a setoff, counterclaim or defense of Pre-Petition Obligations or otherwise. If the Cases are converted to cases under chapter 7 of the Bankruptcy Code prior to

the latest date by which the Ch. 11 Challenge Period would end pursuant to the immediately preceding sentence, then any chapter 7 trustee appointed in such converted Cases shall have a maximum of sixty (60) calendar days (the "Ch. 7 Challenge Period" and, together with the Ch. 11 Challenge Period, the "Challenge Period") after the date that the Cases are converted to bring any such Challenge. The Challenge Period may only be extended: (a) with the prior written consent of the DIP Lender, as memorialized in an order of this Court, or (b) pursuant to an order of this Court upon a showing of good cause for such extension. Except to the extent asserted in an adversary proceeding or contested matter filed during the Challenge Period, upon the expiration of such applicable Challenge Period (to the extent not otherwise waived or barred), (i) any and all Challenges or potential challenges shall be deemed to be forever waived and barred; (ii) all of the agreements, waivers, releases, affirmations, acknowledgements and stipulations contained in this Interim Order and any Final Order shall be irrevocably and forever binding on the Debtors, the Committee and all parties-in-interest and any and all successors-in-interest as to any of the foregoing, including any chapter 7 trustee, without further action by any party or this Court; (iii) the Pre-Petition Obligations shall be deemed to be finally allowed and the Pre-Petition Liens shall be deemed to constitute valid, binding and enforceable encumbrances, and not subject to avoidance pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtors shall be deemed to have released, waived and discharged the Released Parties from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Pre-Petition Obligations. Notwithstanding anything to the contrary herein: (x) if any Challenge is timely commenced, the stipulations contained in the Final Order shall nonetheless remain binding on all other parties-in-interest and preclusive except to the extent that such stipulations are expressly and successfully challenged in such Challenge; and (y) the Released

Parties reserve all of their rights to contest on any grounds any Challenge. Nothing in this Interim Order vests or confers on any person, including, without limitation, the Committee or any other statutory committee that may be appointed in any of the Cases, standing or authority to pursue any cause of action, claim, defense, or other right belonging to the Debtors or their estates.

45. No Third-Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

46. Section 506(c) Claims. Subject to entry of the Final Order providing for such relief, except for the Carve-Out, no costs or expenses of administration that have been or may be incurred in any of the Cases at any time shall be charged against the DIP Lender or the Pre-Petition Lender or any of their respective claims or liens (including any claims or liens granted pursuant to this Interim Order) or the DIP Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

47. Section 552(b). Subject to entry of the Final Order providing for such relief, the Pre-Petition Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section 552(b) shall not apply to the Pre-Petition Lender with respect to proceeds, products, offspring, or profits of any of the Pre-Petition Collateral.

48. No Marshaling/Application of Proceeds. Subject the entry of the Final Order providing for such relief, in no event shall the DIP Lender or the Pre-Petition Lender be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP

Collateral or the Pre-Petition Collateral, as applicable, and all proceeds shall be received and applied in accordance with this Interim Order.

49. Right to Credit Bid. Subject to entry of the Final Order providing for such relief and subject to paragraph 44, each of the Pre-Petition Lender and the DIP Lender shall have the right to "credit bid" the full amount of their respective claims in connection with any sale of all or any portion of the Debtors' assets, including, without limitation, sales occurring pursuant to Section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code. In connection with the foregoing, each of the Pre-Petition Lender and the DIP Lender shall have the right to assign their right to purchase all or any portion of the Debtors' assets in connection with any such "credit bid" to a newly-formed acquisition vehicle; provided that any assignment to an "insider" (as defined by the Bankruptcy Code) or an affiliate of the Debtor shall require the prior approval of the Court.

50. Release. Subject to entry of the Final Order providing for such relief and subject to paragraph 44, the Debtors agree to forever waive and release any and all claims and causes of action against the Pre-Petition Lender and the DIP Lender whether at law or in equity, arising under or relating to the DIP Facility, Section 105 and Chapter 5 of the Bankruptcy Code and under any other similar provisions of applicable state or federal law.

51. Rights Preserved. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Lender's rights to seek any other or supplemental relief in respect of the Debtors; (b) the rights of the DIP Lender under the DIP Loan Documents, the Bankruptcy Code or under applicable law, including, without limitation, the right (i) upon the occurrence and

during the continuation of a Termination Event, to (A) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (B) request dismissal of any of Cases, conversion of any or all of the Cases to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (C) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans of reorganization, or (ii) to object to the application or motion by any professionals retained by the Debtors or any Committee for the payment of fees and expenses, including, without limitation, in connection with the Carve-Out; or (c) any other rights, claims, or privileges (whether legal, equitable or otherwise) of the Pre-Petition Lender or the DIP Lender. Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtors' or any party-in-interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Interim Order.

52. Joint and Several Liability. Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of this Interim Order.

53. No Waiver by Failure to Seek Relief. The DIP Lender's delay or failure to exercise rights and remedies under the DIP Loan Documents, applicable law, or this Interim Order shall not constitute a waiver of any of the DIP Lender's rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed by the DIP Lender.

54. Binding Effect of this Interim Order. Pursuant to Bankruptcy Rules 6004(h) and 7062, immediately upon entry by this Court, this Interim Order shall inure to the benefit of the

Debtors, the Pre-Petition Lender, and the DIP Lender, and it shall become valid and binding upon the Debtors, the Pre-Petition Lender and the DIP Lender, their respective successors and assigns, any and all other creditors of the Debtors, any committee appointed in any of the Cases or any Successor Cases, including, without limitation, the Committee, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of the any of the Debtors in any of the Cases or any Successor Cases, or upon dismissal of any of the Cases or any Successor Cases. Further, upon entry of this Interim Order: (a) the Debtors' admissions contained herein shall be binding on the Debtors; and (b) the DIP Obligations of the Debtors under the DIP Loan Documents shall constitute allowed claims for all purposes in any of the Cases or any Successor Cases for any amounts loaned or advanced pursuant to this Interim Order and absent any stay pending appeal.

55. Interim Order Controls. In the event of any inconsistency between the terms and conditions of the DIP Loan Documents, any other document or any other order of this Court (other than the Final Order) and of this Interim Order, the provisions of this Interim Order shall govern and control.

56. Survival. Unless otherwise agreed to by the DIP Lender, the provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any or all of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any or all of the Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or any Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests, and other protections (as applicable) granted to the Pre-Petition Lender or the DIP Lender pursuant to this Interim Order, notwithstanding the entry of any such order, shall

continue in any of the Cases or any Successor Cases, or following dismissal of any of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order.

57. Notice of Entry of this Interim Order. The Debtors' counsel shall serve a copy of this Interim Order or a suitable notice respecting same on all of the following parties: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the parties included on the Debtors' consolidated list of their thirty (30) largest unsecured creditors; (d) counsel to the DIP Lender; (e) counsel to the Pre-Petition Lender; (f) all other known parties with liens of record on assets of the Debtors as of the Petition Date; (g) all financial institutions at which the Debtors maintain deposit accounts; (h) the landlords for all non-residential real properties occupied by the Debtors as of the Petition Date; (i) all factoring entities; and (j) all other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001 or 9014 and applicable Local Rules or requesting to receive notice prior to the date hereof.

58. Final Hearing. The Final Hearing shall take place on **August 13, 2018 at 10:30 a.m. (prevailing Eastern Time)**. In the event this Court modifies any of the provisions of this Interim Order or other documents following the Final Hearing, such modifications shall not affect the rights and priorities of the DIP Lender pursuant to this Interim Order with respect to the DIP Collateral and any portion of the DIP Facility that arises, or is incurred or is advanced prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically modified pursuant to the Final Hearing.

59. Effect of this Interim Order. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon

its entry and there shall be no stay of execution or effectiveness of this Interim Order. The requirements set forth in Bankruptcy Rule 6003(b) have been satisfied. The requirements of Bankruptcy Rule 6004(a) are waived.

60. Retention of Jurisdiction. This Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Interim Order.

SO ORDERED by this Court this 6th day of August, 2018.

UNITED STATES BANKRUPTCY JUDGE