**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ACTIVECARE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-11659 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 39 & 119** |

**ORDER (I) APPROVING THE ASSET PURCHASE
AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER,
(II) AUTHORIZING THE SALE TO THE PURCHASER OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES, AND INTERESTS, (III) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CONTRACTS, AND (IV) GRANTING RELATED RELIEF**

Upon consideration of the *Motion of Debtors for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Approving the Form and Manner of Notice thereof, (D) Scheduling an Auction and Sale Hearing, (E) Approving Procedures for the Assumption and Assignment of Contracts, and (F) Granting Related Relief; and (II) an Order (A) Approving the Asset Purchase Agreement Between the Debtors and the Successful Bidder, and (B) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts, and (D) Granting Related Relief* (the "**Sale Motion**") [Docket No. 39] of the above-captioned debtors and debtors in possession (the "**Debtors**"), which requests an order (this "**Sale Order**") that, among other things, (a) authorizes and approves that certain Asset Purchase

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are ActiveCare, Inc. (8125) and 4G Biometrics, LLC (5678). The Debtors' mailing address is 1365 West Business Park Drive, Suite 100, Orem, Utah 84058.

Agreement (including all related exhibits and schedules) (the "**Agreement**")[2] among the Debtors and Telcare, LLC or its designee (collectively, the "**Purchaser**"), which provides for, effective as of the Closing on the Closing Date, Debtors' sale, assignment, transfer, conveyance and delivery of substantially all of the Debtors' assets identified therein (collectively, the "**Assets**") to Purchaser, free and clear of all Interests (defined below) except the Permitted Encumbrances (the "**Sale**"), and (b) authorizes and approves the assumption and assignment of certain unexpired leases and executory contracts referenced in the Agreement (the "**Assigned Contracts**"), or in one or more subsequent filings authorized by an order of this Court; it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and it appearing that the Sale Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors consent to entry of a final order under Article III of the United States Constitution; this Court having found that venue of this proceeding and the Sale Motion in this District is proper pursuant to 28 U.S.C. § 1408; adequate notice of the Sale Motion and opportunity for objection having been given; adequate notice with respect to the assumption and assignment of the Assigned Contracts having been given; this Court having reviewed and considered the Sale Motion and any objections thereto; this Court having heard statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Sale Motion at a hearing before this Court (the "**Sale Hearing**"); upon the full record of these Chapter 11 Cases; it appearing that no other notice need be given; it further appearing that the legal and factual bases

---

[2] Except as otherwise defined herein, or where reference is made to a definition in the Sale Motion, all capitalized terms shall have the meanings ascribed to them in the Agreement.

set forth in the Sale Motion and the record made at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor:

THE COURT FINDS AND DETERMINES THAT:

**Jurisdiction, Final Order, and Statutory Predicates**

A.    The findings and conclusions set forth in here constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.   To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

C.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by this Court in connection with the Sale Motion, to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.    Venue is proper in this District pursuant to 28 U.S.C. § 1408.

E.    The bases for the relief requested in this Motion are sections 105(a), 363, 365, 503(b), and 507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"**Bankruptcy Code**"), Bankruptcy Rules 2002, 6004, and 6006(a), and Local Rules 2002-1, 6004-1, and 9013-1(m).

F.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and waives any stay expressly directs entry of judgment as set forth herein.

### Retention of Jurisdiction

G.    It is necessary and appropriate for the Court to retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Agreement, including its related documents, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to Purchaser, and to adjudicate, if necessary, any and all disputes involving the Debtors concerning or relating in any way to, or affecting, the Sale or the transactions contemplated in the Agreement, and related documents.

### Corporate Authority, Consents, and Approvals

H.    The Debtors have, to the extent necessary or applicable, (a) the full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (b) all corporate authority necessary to consummate the transaction contemplated by the Agreement, and (c) taken all corporate action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby.  The Sale has been duly and validly authorized by all necessary corporate action.  No consents or approvals, other than those

expressly provided for in the Agreement, are required for the Debtors to consummate the Sale, the Agreement, or the transactions contemplated thereby.

## Notice of Sale, Auction, and Assumption and Assignment

I.      Actual written notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, and the transactions contemplated thereby, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been afforded to all known interested entities and parties, including, without limitation, the following entities and parties: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) the holders of the 20 largest unsecured claims against the Debtors; (c) counsel to the DIP Lender; (d) the United States Attorney's Office for the District of Delaware; (e) the Internal Revenue Service; (f) all state and local tax authorities with an interest in the Assets; (g) all parties known or reasonably believed to have asserted an Interest (as defined herein) in the Assets; (h) the counterparties to the Contracts (the "**Contract Counterparties**"); (i) the Debtors' insurance carriers; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.

J.      In addition, the Debtors have caused notice of the Sale Motion, the Sale, the Auction, and the Sale Hearing to be published in *The USA Today (National Edition)*, as authorized in the Bidding Procedures Order. *See Notice of Filing of Affidavit of Publication* [Docket No. 142].

K.      In accordance with the provisions of the Bidding Procedures Order, the Debtors have served notice upon the Contract Counterparties: (a) that the Debtors seek to assume and assign to Purchaser the Assigned Contracts on the Closing Date (as defined in the Agreement); and (b) of the relevant Cure Amounts (as defined below). Service of such notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in

respect of establishing a Cure Amount for the Contracts.  Each of the Contract Counterparties has had an opportunity to object to the Cure Amounts set forth in the notice and to the assumption and assignment to Purchaser of the applicable Assigned Contracts. *See Notice of Proposed Assignment of Executory Contracts and Unexpired Leases* [Docket No. 134], and *Notice of Additional Potentially Assumed Executory Contract Regarding Cure Amount and Possible Assignment to Successful Bidder at Auction (Telcare, Inc., Telcare Medical Supply, LLC, and Related Entities)* [Docket No. 169] (collectively, the "**Cure Notices**")

L.    The notice of the Auction and the Sale Hearing provided all interested parties with timely and proper notice of the Sale, the Auction, and the Sale Hearing.  *See Affidavit of Service* [Docket No. 48]; *Affidavit of Service* [Docket No. 49]; *Affidavit of Service* [Docket No. 139].

M.    The Debtors filed the Declaration of Mark Rosenblum in Support of Sale [Docket No. 174; Filed: 9/26/2018] and Declaration of Edward T. Gavin, CTP in Support of the Sale [Docket No. 175; Filed: 9/26/2018].

N.    The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Sale Motion regarding the sales process, including, without limitation: (i) determination of final Cure Amounts; and (ii) approval and authorization to serve notice of the Auction and Sale Hearing.

O.    As evidenced by the affidavits of service and affidavits of publication previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, and the transactions contemplated thereby, including, without limitation, the assumption and assignment of the Assigned Contracts to Purchaser, has been provided in accordance with the Bidding Procedures Order and Bankruptcy Code sections

105(a), 363, and 365 and Bankruptcy Rules 2002, 6004, 6006, 9007, 9008, and 9014.   The notices described herein were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Sale, the Auction, the Sale Hearing, or the assumption and assignment of the Assigned Contracts to Purchaser is or shall be required.

P.    The disclosures made by the Debtors concerning the Sale Motion, the Agreement, the Auction, the Sale Hearing, the Sale, and the assumption and assignment of the Assigned Contracts to Purchaser were good, complete, and adequate.

Q.    A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion, and the relief requested therein (including, without limitation, the assumption and assignment of the Assigned Contracts to Purchaser and any Cure Amounts relating thereto), has been afforded to all interested persons and entities, including the Notice Parties.

## Auction

R.    The Auction scheduled for **September 26, 2018** was cancelled because Purchaser was determined to be the only "Qualified Bidder" pursuant to the Bidding Procedures Order. The Auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer to purchase the Assets.   The Auction was duly noticed and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets.   Prior to cancelling the Auction, the Debtors, in accordance with the Bidding Procedures Order, determined in the exercise of their good faith business judgment that Purchaser submitted the highest and best bid for the Assets and, accordingly, Purchaser was determined to be the Successful Bidder for the Assets.

## Good Faith of Purchaser

S.    As demonstrated by the representations of counsel and other evidence proffered or adduced at the Sale Hearing, the Debtors and their advisors marketed the Assets to secure the

highest and best offer.  The terms and conditions set forth in the Agreement are fair, adequate, and reasonable, including the amount of the Purchase Price, which is found to constitute reasonably equivalent and fair value.

T.    Purchaser is not an "insider" of the Debtors, as that term is defined in Bankruptcy Code section 101(31).  No officer, director, manager, or other insider of the Debtors hold any interest in or is otherwise related to Purchaser.

U.    The Debtors and Purchaser extensively negotiated the terms and conditions of the Agreement in good faith and at arm's length.  Purchaser is purchasing the Assets and has entered into the Agreement in good faith and is a good faith buyer within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (i) Purchaser recognized that the Debtors were free to deal with any other party interested in purchasing the Assets; (ii) Purchaser agreed to subject its bid to competitive bidding at the Auction; (iii) all payments to be made by Purchaser and other agreements or arrangements entered into by Purchaser in connection with the Sale have been disclosed; (iv) Purchaser has not violated Bankruptcy Code section 363(n) by any action or inaction; (v) no common identity of directors or controlling stockholders exists between Purchaser and the Debtors; and (vi) the negotiation and execution of the Agreement was at arm's length and in good faith.

V.    Neither the Debtors nor Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n).  The Debtors and Purchaser were represented by their own respective counsel and other advisors during such arm's length negotiations in connection with the Agreement and the Sale.

W.      No party has objected to the Sale, the Agreement, or the Auction on the grounds of fraud or collusion.

X.      Accordingly, Purchaser is purchasing the Assets in good faith and is a good-faith buyer within the meaning of Bankruptcy Code section 363(m).    The Purchaser is therefore entitled to all of the protections afforded under Bankruptcy Code section 363(m).

### Highest and Best Offer

Y.      The Debtors conducted a sale process in accordance with, and have otherwise complied in all respects with, the Bidding Procedures Order.    The sale process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets.    The Auction was duly noticed in a non-collusive, fair, and good-faith manner, and a reasonable opportunity has been given to any interested party to make a higher and better offer for the Assets.

Z.      The Agreement constitutes the highest and best offer for the Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.    The Debtors' determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

AA.     The Agreement represents a fair and reasonable offer to purchase the Assets under the circumstances of these Chapter 11 Cases.    No other entity or group of entities has offered to purchase the Assets for greater overall value to the Debtors' estates than Purchaser.

BB.     Approval of the Sale Motion and the Agreement and the consummation of the transaction contemplated thereby are in the best interests of the Debtors' chapter 11 estates, their creditors, and other parties in interest.

CC.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Asset Sale prior to, and outside of, a plan of reorganization.

**No Fraudulent Transfer or Merger**

DD.    The consideration provided by Purchaser pursuant to the Agreement (a) is fair and reasonable, (b) is the highest or best offer for the Assets, and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, and Bankruptcy Code section 548).

EE.    The Purchaser is not a mere continuation of the Debtors or their estates, and there is no continuity of enterprise between Purchaser and the Debtors.  The Purchaser is not holding itself out to the public as a continuation of the Debtors.  The Purchaser is not a successor to the Debtors or their estates, and the Sale does not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtors.

**Validity of Transfer**

FF.    The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any of its states, territories, or possessions, or the District of Columbia.  Neither the Debtors nor Purchaser are entering into the transactions contemplated by the Agreement fraudulently, for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims.

GG.    The Debtors are the sole and lawful owner of the Assets.  Subject to Bankruptcy Code section 363(f) (addressed below), the transfer of the Assets to Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of any

interest in such property of any entity other than the Debtors' estates (collectively, "**Interests**"), including, without limitation:(a) all liens and encumbrances relating to, accruing, or arising at any time prior to the Closing Date (collectively, the "**Liens**"); and (b) all debts arising under, relating to, or in connection with any act of the Debtors or any claims (as defined in Bankruptcy Code section 101(5)), liabilities, obligations, demands, guarantees, options in favor of third parties, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, or otherwise (collectively, the "**Claims**").

HH.    This Court makes no findings as to which Assets 4G Biometrics was the sole and lawful owner of and which Assets ActiveCare was the sole and lawful owner of prior to approval of the Sale. Notwithstanding the forgoing, whether it is finally determined that 4G Biometrics is the owner of the Assets and/or Activecare is the owner of the Assets, such final determination will have no impact on the transfer of the Assets by both 4G Biometrics and Activecare to the Purchaser free and clear of all Interests.

II.    For the avoidance of doubt, the terms "Liens" and "Claims," as used in this Sale Order, include, without limitation, rights with respect to any Liens and Claims:

(a)    that purport to give any party a right of setoff or recoupment against, or a right or option to affect any forfeiture, modification, profit-sharing interest, right of first refusal, purchase or repurchase writer option, or termination of, any of the Debtors' or Purchaser's interest in the Assets, or any similar rights; or

(b)     in respect of taxes, restrictions, rights of first refusal, charges of interest of any kind and nature, if any, and including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any of the attributes of ownership relating to, accruing, or arising at any time prior to the Closing Date, with the exception of Permitted Encumbrances and Assumed Liabilities (as those terms are defined in the Agreement) that are expressly assumed by Purchaser pursuant to the Agreement.

JJ.    For the further avoidance of doubt, Purchaser is expressly assuming responsibility for, and the Assets will be transferred subject to, the Cure Amounts as set forth in the Agreement and any obligations arising on or after the Closing Date under the Assigned Contracts, as set forth in the Agreement.

## Section 363(f) Is Satisfied

KK.    The conditions of Bankruptcy Code section 363(f) have been satisfied in full; therefore, the Debtors may sell the Assets free and clear of any Interests in the property other than any Permitted Encumbrances and Assumed Liabilities.

LL.    The Purchaser would not have entered into the Agreement, and would not consummate the transactions contemplated thereby, if the Sale of the Assets to Purchaser and the assumption of any Assumed Liabilities by Purchaser were not free and clear of all Interests, other than Permitted Encumbrances and the Assumed Liabilities, or if Purchaser would, or in the future could, be liable for any of such Interests (other than the Permitted Encumbrances and the Assumed Liabilities).  Unless otherwise expressly included in the Permitted Encumbrances or the Assumed Liabilities, Purchaser shall not be responsible for any Interests against the Debtors,

their estates, or any of the Assets, including in respect of the following: (a) any labor or employment agreement; (b) all mortgages, deeds of trust, and other security interests; (c) intercompany loans and receivables among the Debtors and any of their affiliates (as defined in Bankruptcy Code section 101(2)); (d) any other environmental, employee, workers' compensation, occupational disease, or unemployment- or temporary disability-related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988, (vii) the Age Discrimination and Employee Act of 1967 and the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) state discrimination laws, (xi) the unemployment compensation laws or any other similar state laws, or (xii) any other state or federal benefits or claims relating to any employment with the Debtors or their predecessor, if any, (xiii) Claims or Liens arising under any Environmental Law (as defined in the Agreement) with respect to the Debtors' business, Excluded Liabilities (as defined in the Agreement), the Assets, the Excluded Assets (as defined in the Agreement), or any assets owned or operated by the Debtors or any corporate predecessor of the Debtors, at any time prior to the Closing Date, (xiv) any bulk sales or similar law, (xv) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, and (xvi) any statutory or common-law bases for successor liability.

MM.    The Debtors may sell the Assets free and clear of all Interests in such property of any entity other than the Debtors, including, without limitation, any Liens and Claims against the

Debtors, their estates, or any of the Assets (other than the Permitted Encumbrances and Assumed Liabilities) because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(1)-(5) has been satisfied.  Those holders of Interests in the Assets, including, without limitation, holders of Liens and Claims against the Debtors, their estates, or any of the Assets, who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).  All other holders of Interests (except to the extent that such Interests are Permitted Encumbrances or Assumed Liabilities) are adequately protected by having their Interests, if any, in each instance against the Debtors, their estates, or any of the Assets, attached to the net proceeds of the Sale received by the Debtors ultimately attributable to the Assets in which such party alleges an Interest, in the same order of priority, with the same validity, force, and effect that such Interests had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**Assumption and Assignment of the Assigned Contracts**

NN.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Sale Order is integral to the Agreement and is in the best interests of the Debtors and their estates, their creditors, and all of the parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

OO.    Unless otherwise agreed and stated on the record at the Sale Hearing, the respective amounts set forth under the "Cure Amount" in the Cure Notices reflect the sole amounts necessary under Bankruptcy Code section 365(b) to cure all monetary defaults and pay all pecuniary losses under the Assigned Contracts (collectively, the "**Cure Amounts**"), and no

other amounts are or shall be due in connection with the assumption by the Debtors in the assignment to Purchaser of the Assigned Contracts.

PP.    As of the Closing Date, subject only to the payment of the Cure Amounts, as determined in accordance with the procedures identified in the Sale Motion and its accompanying and related documents, each of the Assigned Contracts will be in full force and effect and enforceable by Purchaser against any Contract Counterparty thereto in accordance with its terms.

QQ.    The Debtors have, to the extent necessary, satisfied the requirements of Bankruptcy Code sections 365(b)(1) and 365(f) in connection with the Sale, the assumption and assignment of the Assigned Contracts, and shall upon assignment thereto on the Closing Date, be relieved from any liability for any breach thereof.

RR.    Purchaser has demonstrated that it has the financial wherewithal to fully perform and satisfy the obligations under the Assigned Contracts as required by Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).    Pursuant to Bankruptcy Code section 365(f)(2)(B), Purchaser has provided adequate assurance of future performance of the obligations under the Assigned Contracts.

SS.    The Purchaser's promise to pay the Cure Amounts, as set forth in the Agreement, and to perform the obligations under the Assigned Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

TT.    Any objections to the assumption and assignment of any of the Assigned Contracts to Purchaser are hereby overruled or withdrawn.    Any objection to the Cure Amounts are hereby overruled or withdrawn.    To the extent that any Contract Counterparty failed to timely

object to its Cure Amount or to the assumption and assignment of its Assigned Contracts to Purchaser, such Contract Counterparty is deemed to have consented to such Cure Amount and the assignment of its Assigned Contract(s) to Purchaser.

## Sound Business Purpose for the Sale

UU.    Good and sufficient reasons for approval of the Agreement and the Sale have been articulated.  The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

VV.    The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the Agreement and (b) compelling circumstances for the sale outside the ordinary course of business, pursuant to Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to Purchaser is necessary and appropriate to maximize the value of the Debtors' estates, and the Sale will provide the means for the Debtors to maximize distributions to creditors.

## Compelling Circumstances for an Immediate Sale

WW.    To maximize the value of the Assets and preserve the viability of the business to which the Assets relate, it is essential that the Sale of the Assets occur within the time constraints set forth in the Agreement and the Cash Collateral Order.    Time is of the essence in consummating the Sale.

XX.    Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Agreement, the proposed Sale of the Assets to Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

YY.    The consummation of the Sale and the assumption and assignment of the Assigned Contracts is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

ZZ.    The Sale does not constitute a *sub rosa* or *de facto* chapter 11 plan for which approval has not been sought without the protections that a disclosure statement would afford, as it does not and does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any future plan proposed by the Debtors; (iii) circumvent chapter 11 plan safeguards, such as those set forth in Bankruptcy Code sections 1125 and 1129; or (iv) classify claims or equity interests, compromise controversies, or extend debt maturities.    Accordingly, the Sale neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

## General Provisions.

1.    **Relief Granted.**    The relief requested in the Sale Motion and the transactions contemplated thereby and by the Agreement are approved for the reasons set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if fully set forth in this Sale Order.

2.    **Objections Overruled.**    All objections to the Sale Motion and the relief requested therein that have not been withdrawn, waived, or settled by announcement to the Court during the Sale Hearing or by stipulation filed with the Court, including, without limitation, any and all

reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits, with prejudice. Those parties who did not object, or withdrew their objections, to the Sale Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).

3. **Prior Findings and Conclusions Incorporated.** This Court's findings of fact and conclusions of law set forth in the Bidding Procedures Order are incorporated herein by reference.

4. **Sale Order and Agreement Binding on All Parties.** This Sale Order and the Agreement shall be binding in all respects upon all creditors of and holders of equity interests in the Debtors (whether known or unknown), agents, trustees and collateral trustees, holders of Interests in, against, or on the Assets, or any portion thereof, all Contract Counterparties and any other non-Debtor parties to any contracts with the Debtors (whether or not assigned), all successors and assigns of the Debtors, and any subsequent trustees appointed in the Chapter 11 Cases or upon a conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code and shall not be subject to rejection or unwinding. Nothing in any chapter 11 plan confirmed in the Chapter 11 Cases, the confirmation order confirming any such chapter 11 plan, any order approving the wind down or dismissal of the Chapter 11 Cases, or any order entered upon the conversion of the Chapter 11 Cases to one or more cases under chapter 7 of the Bankruptcy Code or otherwise shall conflict with or derogate from the provisions of the Agreement or this Sale Order.

**Approval of the Agreement**

5. **Agreement Approved.** The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

6. **Authorization to Consummate Transactions.** Pursuant to Bankruptcy Code sections 363(b) and (f), the Debtors are authorized, empowered, and directed to use their

reasonable best efforts to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement and this Sale Order, (b) close the Sale as contemplated in the Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the Agreement, including the assumption and assignment to Purchaser of the Assigned Contracts, together with additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale.

**Transfer of the Assets**

7.     **Transfer of the Assets Authorized.**   Pursuant to Bankruptcy Code sections 105(a), 363(b), and 363(f), the Debtors are authorized and directed to use reasonable best efforts to transfer the Assets to Purchaser on or as soon as reasonably practicable after the Closing Date, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest Purchaser with title to the Assets.

8.     **Surrender of Assets by Third Parties.**   All persons and entities that are in possession of some or all of the Assets on the Closing Date are directed to surrender possession of such Assets to Purchaser or its assignee at the Closing.   On the Closing Date, each of the Debtors' creditors are authorized and directed to execute such documents and take such other actions as may be reasonably necessary to release their Interests in the Assets, if any, as such Interests may have been recorded or may otherwise exist.   All persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to Purchaser in accordance with the terms of the Agreement and this Sale Order.

9.     **Transfer Free and Clear of Interests.**   Upon the Debtors' receipt of the Purchase Price, and other than Permitted Encumbrances and Assumed Liabilities specifically set

forth in the Agreement, the transfer of the Assets to Purchaser shall be free and clear of all Interests of any kind or nature whatsoever, including, without limitation, (a) successor or successor-in-interest liability, (b) Claims in respect of the Excluded Liabilities, and (c) any and all Contracts not assumed and assigned to Purchaser pursuant to the terms of the Agreement, with all such Interests to attach to the net proceeds received by the Debtors ultimately attributable to the property Assets against, or in, which such Interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Interests now have against the Assets, subject to any rights, claims, and defenses that the Debtors or their estates, as applicable, may possess with respect thereto.

10.     **Legal, Valid, and Marketable Transfer with Permanent Injunction.**     The transfer of the Assets to Purchaser pursuant to the Agreement constitutes a legal, valid, and effective transfer of good and marketable title of the Assets, and vests, or will vest, Purchaser with all right, title, and interest to the Assets, free and clear of all Interests except as otherwise expressly stated as obligations of Purchaser under the Agreement.  All Persons holding interests or claims of any kind or nature whatsoever against the Debtors or the Assets, the operation of the Assets prior to the Closing Date, the Auction or the Asset Sale are hereby and forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors or assigns, its property, or the Assets, any claim, interest or liability existing, accrued, or arising prior to the Closing.

11.     **Recording Offices and Releases of Interests.**     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete assignment, conveyance, and transfer of the Assets or a bill of sale transferring good and marketable title of the Assets to Purchaser.  This Sale Order is and shall be effective as a

determination that, on the Closing Date, all Interests of any kind or nature whatsoever existing as to the Assets prior to the Closing date, other than Permitted Encumbrances and Assumed Liabilities, or as otherwise provided in this Sale Order, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been affected.  This Sale Order is and shall be binding upon and govern the acts of all persons, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.  A certified copy of this Sale Order may be: (a) filed with the appropriate clerk; (b) recorded with the recorder; and/or (c) filed or recorded with any other governmental agency to act to cancel any Interests against the Assets, other than the Permitted Encumbrances. However, for the avoidance of doubt, the provisions of section 1146(a) of the Bankruptcy Code do not apply.

12.    **Cancellation of Third-Party Interests.**  If any person or entity which has filed statements or other documents or agreements evidencing Interests on or in all or any portion of the Assets (other than with respect to Permitted Encumbrances or Assumed Liabilities) has not

delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Interests which such person or entity has or may assert with respect to all or a portion of the Assets, the Debtors and Purchaser are authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.  Notwithstanding the foregoing, the provisions of this Sale Order authorizing the transfer of the Assets free and clear of all Interests (except only for Permitted Encumbrances and Assumed Liabilities) shall be self-executing, and it shall not be, or be deemed, necessary for any person or entity to execute or file releases, termination statements, assignments, consents, or other instruments in order for the provisions of this Sale Order to be implemented.

### Assumption and Assignment of Contracts

13.    **Authorization to Assume and Assign.**    Upon the Closing, the Debtors are authorized and directed, in accordance with Bankruptcy Code sections 105(a), 363 and 365, to assume and assign each of the Assigned Contracts to Purchaser free and clear of all Interests as of the Closing Date.  The payment of the applicable Cure Amounts (if any) shall (a) effect a cure or adequate assurance of cure of all defaults existing thereunder as of the date on which the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "**Petition Date**") and (b) compensate for any actual pecuniary loss to such Contract Counterparty resulting from such default.  Purchaser shall then have assumed the Assigned Contracts and, pursuant to Bankruptcy Code section 365(f), the assignment by the Debtors of such Assigned Contracts shall not be a default thereunder.  After the payment of the relevant Cure Amounts, neither the Debtors, nor Purchaser shall have any further liabilities to the Contract Counterparties other than Purchaser's obligations under the Assigned Contracts, that become due and payable on

or after the Closing Date.  The Court makes no finding in this Sale Order whether a liability under an Assigned Contract was due and payable before Closing or otherwise accrued.

14.    **Assignment Requirements Satisfied.**  The Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, Purchaser, in accordance with their respective terms, notwithstanding (a) any provision in any such Assigned Contract (including provisions of the type described in Bankruptcy Code sections 365(b)(2), (e)(1) and (f)(1)) which prohibits, restricts or conditions such assignment or transfer or (b) any default by the Debtors prior to Closing under any such Assigned Contract or any disputes between the Debtors and a Contract Counterparty with respect to any such Assigned Contract arising prior to Closing.    In particular, any provisions in any Assigned Contract that restrict, prohibit or condition the assignment of such Assigned Contract or allow the Contract Counterparty to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to Purchaser of the Assigned Contracts have been satisfied.    Upon the Closing, in accordance with Bankruptcy Code sections 363 and 365, Purchaser shall be fully and irrevocably vested with all right, title, and interest of the Debtors under the Assigned Contracts.

15.    **Consent to Assign.**  The Contract Counterparties to each Assigned Contract shall be and hereby are deemed to have consented to such assumption and assignment under Bankruptcy Code section 365(c)(1)(B) or this Court has determined that no such consent is required, and Purchaser shall enjoy all of the rights and benefits under each such Assigned

Contract as of the Closing Date without the necessity of obtaining the Contract Counterparty's written consent to the assumption and assignment thereof.

16.     **Section 365(k).**    Upon the Closing and the payment of the applicable Cure Amount, Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assigned Contracts and the Debtors and their estates shall be relieved, pursuant to Bankruptcy Code section 365(k), from any further liability under the Assigned Contracts.

17.     **No Default.**    Subject to the terms hereof with respect to the Cure Amounts, all defaults or other obligations of the Debtors under the Assigned Contracts arising or accruing prior to the Closing Date have been cured or shall promptly be cured by the Debtors in accordance with the terms hereof such that Purchaser shall have no liability or obligation with respect to any default or obligation arising or accruing under any Assigned Contract prior to the Closing Date, except to the extent expressly provided in the Agreement, except for payment of the Cure Amounts.    Each party to an Assigned Contract is forever barred, estopped, and permanently enjoined from asserting against Purchaser or its property or affiliates, or successors and assigns, any breach or default under any Assigned Contract, any claim of lack of consent relating to the assignment thereof, or any counterclaim, defense, setoff, right of recoupment or any other matter arising prior to the Closing Date for such Assigned Contract or with regard to the assumption and assignment therefore pursuant to the Agreement or this Sale Order.    Upon the payment of the applicable Cure Amount, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist under the Assigned Contracts.

18.     **Adequate Assurance Provided.** The requirements of Bankruptcy Code sections 365(b)(1) and 365(f)(2) are hereby deemed satisfied with respect to the Assigned Contracts based on Purchaser's evidence of its financial condition and wherewithal and without any further

action by Purchaser, including but not limited to any other or further deposit. Pursuant to Bankruptcy Code section 365(f), Purchaser has provided adequate assurance of future performance of the obligations under the Assigned Contracts.

19.      **No Fees.** There shall be no rent accelerations, assignment fees, increases or any other fees charged to Purchaser or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

20.      **Injunction.** Pursuant to Bankruptcy Code sections 105(a), 363, and 365, other than the right to payment of the Cure Amounts, if any, all Contract Counterparties are forever barred and permanently enjoined from raising or asserting against the Debtors or Purchaser any assignment fee, default, breach or claim, or pecuniary loss arising under or related to the Assigned Contracts existing as of the Petition Date or any assignment fee or condition to assignment arising by reason of the Closing.

21.      **Contract Objections.** Except for Contract Counterparties who filed a timely objection to the Cure amount by **September 6, 2018**, at 4:00 p.m. (prevailing Eastern Time), which objection shall be resolved in accordance with the procedures set forth in the Bidding Procedures Order (a "**Contract Objection**"), such Contract Counterparty is deemed to have consented to such Cure Amount. Except for a Contract Counterparties who filed a timely Contract Objection to the Debtors' proposed assignment of such Assigned Contracts to Purchaser, which objection shall be resolved in accordance with the procedures set forth in the Bidding Procedures Order, such Contract Counterparty is deemed to have consented to the assumption and assignment, and Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to, such Assigned Contracts pursuant to Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B). With respect to any timely-filed

Contract Objections, such objection shall be resolved in accordance with the procedures set forth in the Bidding Procedures Order.  The provisions of this Sale Order shall be effective and binding upon the Contract Counterparties to the extent set forth in, and in accordance with, such procedures.  Nothing in this Sale Order, the Sale Motion, or in any notice or any other document is, or shall be, deemed an admission by the Debtors that any Assigned Contract is an executory contract or unexpired lease, or must be assumed and assigned pursuant to the Agreement in order to consummate the Sale.

22.      **No Waiver of Rights.**  The failure of the Debtors or Purchaser to enforce one or more terms or conditions of any Assigned Contracts that existed prior to Closing shall not be a waiver of any such terms or conditions, or of Purchaser's rights to enforce every term and condition of the Assigned Contracts that existed prior to Closing.

23.      **Revision to List of Assigned Contracts Prior to Closing.**  Prior to the Closing, the Purchaser shall be entitled to delete any contract from Schedule 2.5(a) of the Agreement and, upon such deletion, such contract shall not be deemed an Assigned Contract.  The Debtors shall file a notice with the Court informing the Court of such deletion(s) and serve the notice on any affected Contract Counterparty.

24.      **Distribution of Proceeds.**  Pursuant to paragraph 41 of the Final DIP Order [Docket No. 118], upon the Closing of the Sale hereunder, all proceeds from such Sale shall be turned over to the DIP Lender on the Closing Date to be applied to: (a) first, the DIP Obligations, until the full satisfaction thereof, and (b) then to the outstanding amounts owing in accordance with the Pre-Petition Loan Documents (i.e., the Pre-Petition Obligations); with exception of: (i) those funds remaining to be drawn down under the Approved Budget in the amount of $590,390, which consists of $127,548 for operational costs and $462,842 for non-operational costs

remaining to be drawn on the DIP less cash on hand in the amount of $311,590.00; and (ii) the Retained Proceeds (as defined below); and (iii) cash in the amount of $31,900 to fund initial cash collateral needs after the Closing of the Sale through October 12, 2018.  The Debtors are authorized to use this additional $31,900 of cash collateral with the prior consent of the DIP Lender.

25.    Notwithstanding anything to the contrary herein or in any cash collateral or DIP order, the Debtors shall retain $250,000 of cash proceeds from the Sale and shall hold such funds in trust in an account, as agreed to by the Committee and the DIP Lender in writing (the "**Retained Proceeds**") in a manner satisfactory to the Committee and the DIP Lender.  The Retained Proceeds shall remain subject to the DIP Lender's liens, if any, and shall remain in such account, shall remain in trust, and shall not be used by the Debtors for any reasons without further order of this Court or by written agreement between the Committee and the DIP Lender.

## Prohibition of Actions Against Purchaser

26.    **No Successor Liability.**  Except for the Permitted Encumbrances and Assumed Liabilities set forth in the Agreement, or as otherwise expressly provided for in this Sale Order or the Agreement, Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets.  Without limiting the generality of the foregoing, and except as otherwise expressly provided herein or in the Agreement, Purchaser shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and Purchaser shall have no successor or vicarious liabilities of any kind or character, including, without limitation, under any theory of antitrust, environmental, successor, or transfer reliability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing, or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, with or liquidated or unliquidated, including, without

limitation, liabilities on account of warranties, intercompany loans, receivables among the Debtors and their affiliates, environmental liabilities, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the Closing.

27.    **Actions Against Purchaser Enjoined.**    Except with respect to Permitted Encumbrances and Assumed Liabilities set forth in the Agreement, or as otherwise permitted by the Agreement or this Sale Order, all persons and entities, including, without limitation, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Interest of any kind or nature whatsoever against, or in, all or any portion of the Assets, arising under, out of, in connection with, or in any way relating to, the Debtors, the Assets, the operation of the Debtors' business prior to the Closing Date, or the transfer of the Assets to Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against Purchaser, or any of its affiliates, successors, or assigns, or their property or the Assets, such persons' or entities' Interests in and to the Assets, including, without limitation, the following actions against Purchaser or its affiliates, or their successors, assets, or properties: (a) commencing or continuing in any manner any action or other proceeding; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or other order; (c) creating, perfecting, or enforcing any Lien or other Claim; (d) asserting any set off, right of subrogation, or recoupment of any kind; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of this Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or

failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Assets or conduct any of the business operated with the Assets.

**Other Provisions**

28.      **Purchaser's Waiver of Rights**.  Purchaser waives any and all right to participate in any recovery, in any form, from the assets of, or distributions from, the Debtors' estates, on account of or with respect to the Telcare Note and Accounts Payable Owed to Telcare (each as defined in the Stalking Horse Agreement).  Purchaser's waiver of rights in this Paragraph shall only be effective upon the Closing of the Sale.

29.      **Effective Immediately.** For cause shown, pursuant to Bankruptcy Rules 6004(h), 6006(d), and 7062(g), this Sale Order shall not be stayed and shall be effective immediately upon entry, and the Debtors and Purchaser are authorized to close the Sale immediately upon entry of this Sale Order.  The Debtors and Purchaser may consummate the Agreement at any time after entry of this Sale Order by waiving any and all closing conditions set forth in the Agreement that have not been satisfied and by proceeding to close the Asset Sale without any notice to the Court, any pre-petition or post-petition creditor of the Debtors and/or any other party in interest.

30.      **Access to Books and Records.**  As set forth more fully in the Agreement, for a period of three (3) years following the Closing of the Sale, the Debtors shall have, and Purchaser shall provide, reasonable access to their books and records, to the extent they are included in the Assets transferred to Purchaser as part of the Sale.

31.      **Bulk Sales Law.**  No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

32.      **Agreement Approved in Entirety.**   The failure specifically to include any particular provision of the Agreement in this Sale Order shall not diminish or impair the

effectiveness of such provision, it being the intent of this Court that the Agreement be authorized and approved in its entirety.

33.    **Modifications to Agreement.**    The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, in a writing signed by such parties, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

34.    **Standing.**    The transactions authorized herein shall be of full force and effect, regardless of any Debtors' lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

35.    **Authorization to Effect Order.**    The Debtors are authorized to take all actions necessary to effect the relief granted pursuant to this Sale Order in accordance with the Sale Motion.

36.    **Automatic Stay.**    The automatic stay pursuant to Bankruptcy Code section 362 is hereby modified, lifted, and annulled with respect to the Debtors and Purchaser to the extent necessary, without further order of this Court, to (a) allow Purchaser to deliver any notice provided for in the Agreement and (b) allow Purchaser to take any and all actions permitted under the Agreement in accordance with the terms and conditions thereof.

37.    **No Other Bids.**    No further bids or offers for the Assets shall be considered or accepted by the Debtors after the date hereof unless the Sale to Purchaser is not consummated or otherwise does not occur in accordance with the Agreement or its related documents.

38.    **Order to Govern.**    To the extent that this Sale Order is inconsistent with any prior order entered or pleading filed in these Chapter 11 Cases, the terms of this Sale Order shall

govern.  To the extent there are any inconsistencies between the terms of this Sale Order and the

Agreement (including all ancillary documents executed in connection therewith), the terms of

this Sale Order shall govern.

**Dated: October 2nd, 2018**
**Wilmington, Delaware**

**LAURIE SELBER SILVERSTEIN**
**UNITED STATES BANKRUPTCY JUDGE**